NYKA and others, Respondents, vs. THE STATE, Appellant.

*January 12—February 8, 1955.*

For the appellant there were briefs by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

For the respondents there were briefs by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and oral argument by *Arthur W. Lueck.*

MARTIN, J. It is the basic contention of the plaintiffs that Mary Jaczko was incompetent to execute the deed in question.

In 28 Am. Jur., Insane and Other Incompetent Persons, pp. 751–753, it is stated:

"It is well settled that the law will presume sanity rather than insanity, competency rather than incompetency; it will presume that every man is sane and fully competent until satisfactory proof to the contrary is presented." P. 751, sec. 121.

"The rule, with relation to the burden of proof of insanity, is generally stated to be that the burden of proof to establish insanity rests with the party who alleges it or seeks to avoid an act on account of insanity. It devolves upon such party to establish the factum of insanity by a preponderance of the evidence." P. 752, sec. 122.

". . . in the case of a conveyance, the burden of proof of unsoundness of mind and incapacity of the grantor at the time of the conveyance rests upon the party who seeks the impeachment of the deed solely upon this ground." P. 753, sec. 123.

Scott Runke was the only witness who could testify as to the facts surrounding the actual execution of the deed. There was a dirty house; a woman lying in a dirty bed; she was "sick lady." The attorney presented a deed to her, saying, "Here is to sign it," placed it on the bed beside her and she made her mark. Except for those words of the attorney, no one said anything. The deed was not read to her—"she wouldn't understand anyway."

Are these facts from which it can be inferred that the woman was insane when she made her mark on the deed? The lack of sanitation would have nothing to do with mental competency. Runke's statement that she was sick, the only evidence in the record regarding her physical condition, has no probative force. There is no showing that her illness, if indeed she was ill, was such as would probably have affected her mental capacity. The witness did not know Mary Jaczko, had never seen her before the execution of the deed, and never saw her after that. If, by his statement that "she wouldn't understand anyway," he meant that he believed she lacked competency, his opinion has no weight as evidence in the absence of facts showing it to be an intelligent opinion based on personal knowledge and means of observation. See *Crawford v. Christian* (1899), 102 Wis. 51, 78 N. W. 406; *Will of Emerson* (1924), 183 Wis. 437, 198 N. W. 441. In any event, many deeds would be invalid if their validity depended on the grantor's understanding of their phraseology. Certainly, in the case of Mary Jaczko, an uneducated woman, it is highly improbable that in the exercise of all her mental faculties she would have understood it. That neither she nor the attorney spoke during the meeting is hard-

ly strange in view of the fact that she was a Polish woman who almost never conversed in English.

Plaintiffs argue that the only inference to be drawn from the facts testified to by Runke is that the attorney prepared the deed at the direction of the husband. Perhaps so, but even if Gergen had discussed it only with the husband, that would not indicate she knew nothing about it. On the contrary, the fact that she apparently expected the attorney's visit and unhesitatingly made her mark on the deed without explanation, is more compelling of the inference that she had discussed the matter either with the lawyer or with her husband, or both, and knew what was required of her and why.

Mr. Gergen is dead, but there is no question that he was a lawyer of many years practice and good repute. The record contains nothing to indicate that he neglected his professional duty to satisfy himself of Mrs. Jaczko's legal capacity to do what he asked her to do when he presented the deed. Moreover, the other witness to the execution, Mr. Runke, was a man of long experience in the real-estate business and it must be presumed he knew the requirement of mental capacity to execute a deed. He witnessed her mark to it without question or objection.

Plaintiffs produced witnesses who testified that on frequent occasions both before and after August 13, 1945, Mary Jaczko told them that all her property would go to her children. A neighbor stated that a few days before Mary's death Peter Jaczko offered to sell him the place and when he talked to Mary about it she protested, "No, no, no, Pete can't sell that place, that belongs to the children." This incident occurred more than two years after the deed was executed.

It is plaintiffs' position that Mary Jaczko was rational when she made such statements and that since the effect of the deed is inconsistent with the intention thus expressed, she was irrational at the time she executed it.

Samuel Nyka, Mary's son, testified that his mother's eye-sight and hearing were rather poor. But none of the witnesses testified to peculiarities, changed behavior or attitudes, forgetfulness, or signs of any other mental weakness indicative of incompetency at any time in Mary Jaczko's life. Testimony that on a few occasions she mistook the identity of two grandsons-in-law does not show she did not possess the mental capacity to executed a deed. The record is devoid of any evidence that she was incompetent on August 13, 1945, or during any period when she determined to give her husband a joint interest in her real estate, or at any other time. We cannot agree that the mere inconsistency between statements made to comparative strangers regarding her personal affairs and the effect of executing the deed shows that she did not know the nature of her act.

This court has previously laid stress upon the nature of the act itself in determining whether it was performed in a lucid state of mind. In *Wright v. Jackson* (1884), 59 Wis. 569, 583, 18 N. W. 486, this court considered the validity of certain conveyances made by one Charles Wright. Prior to executing the deeds Wright had been institutionalized as insane on several occasions. There the question was whether the act was done in a sane interval between periods of insanity. The testimony was in conflict and the court considered in detail the character of the act itself, saying:

". . . it seems to be well settled that, although the act itself may not be the 'strongest and best' proof, yet it is, or may be, strong proof of a lucid interval. 1 Wharton & S. Med. Jur., sec. 65, and cases cited; *Ripley v. Babcock,* 13 Wis. 425. Here we have an act which Mr. Wright might reasonably have been expected to do were his sanity undoubted. By doing it he accomplished desired and commendable objects. It was a rational act which, so far as we can discover, was done in a rational manner."

Mary and Peter Jaczko had been married for thirty years when she executed the deed of August 13, 1945. So far as the record shows, it was a happy marriage. The home which Peter Jaczko had shared with his wife all those years was her property and it was perfectly natural for her to provide that it should continue to be his home if she predeceased him.

There is no evidence that he prevailed upon her to do so, but even if he had, it cannot be said that her acquiescence shows she was mentally unsound. It was a natural act, naturally growing out of the long relationship of husband and wife. Mrs. Jaczko's act in conveying to her husband a joint interest in the property upon which they had lived together for over thirty years is what might well be expected of a rational person. This is particularly "strong proof" in a case where there is nothing but suspicion and innuendo to support the allegation of mental incapacity.

It is probably true that stronger proof in the case would have been available had this action been commenced while Peter Jaczko lived. It is of considerable significance that one of the plaintiffs, Samuel Nyka, learned of the deed a week after his mother's death but waited more than two years, until after the death of Peter, to contest the validity of the deed on the ground of the grantor's incompetence. Without any explanation in the record, one could well assume that it was felt some benefit would accrue to the plaintiffs by such delay.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

CURRIE, J., dissents.