Kathy HAUER, Plaintiff-Respondent-Cross Appellant,

v.

UNION STATE BANK OF WAUTOMA, Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 93–3033. Oral argument September 20, 1994.—Decided March 15, 1995.*

(Also reported in 532 N.W.2d 456.)

On behalf of the defendant-appellant cross respondent, there were briefs by *David E. Leichtfuss and Joshua L. Gimbel* of *Michael, Best & Friedrich* of Milwaukee. There were oral arguments by *David E. Leichtfuss.*

On behalf of the plaintiff-respondent cross appellant, there was a brief and oral arguments by *Thomas*

*E. Hughes* of *Hughes, Mathewson, Carns & Slattery* of Oshkosh.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. The issues in this case arise out of a loan made by Union State Bank of Wautoma to Kathy Hauer. The Bank appeals from a judgment which (1) voided the loan on the grounds that Hauer lacked the mental capacity to enter into the loan, (2) required the Bank to return Hauer's collateral and (3) dismissed the Bank's counterclaim which sought to recover the proceeds of the loan from Hauer. Because we conclude that there is evidence in the record to support the jury's findings that Hauer was mentally incompetent at the time of the loan and that the Bank failed to act in good faith in granting the loan, we affirm.

## I. FACTS

In order to place the loan in context, we must first set forth the relevant events giving rise to the loan. The following facts are taken from court documents and undisputed testimony at trial.

In 1987, Hauer suffered a brain injury in a motorcycle accident. She was subsequently adjudicated to be incompetent, resulting in a guardian being appointed by the court. On September 20, 1988, Hauer's guardianship was terminated based upon a letter from her treating physician, Kenneth Viste. Viste opined that Hauer had recovered to the point where she had ongoing memory, showed good judgment, was reasonable in her goals and plans and could manage her own affairs. Her monthly income after the accident was $900, which consisted of social security disability and inter-

est income from a mutual fund worth approximately $80,000.

On October 18, 1988, the Bank loaned Ben Eilbes $7600 to start a small business. In December, Eilbes requested but was denied an additional $2000 loan from the Bank. By June of 1989, Eilbes was in default on the loan. Around this time, Eilbes met Hauer through her daughter, who told Eilbes about the existence of Hauer's mutual fund. Eilbes subsequently discussed his business with Hauer on several occasions and Hauer expressed an interest in becoming an investor in the business. Because Hauer could only sell her stocks at certain times, Eilbes suggested that she take out a short-term loan using the stocks as collateral. Eilbes told Hauer that if she loaned him money, he would give her a job, pay her interest on the loan and pay the loan when it came due. Hauer agreed.

Eilbes then contacted Richard Schroeder, assistant vice president of the Bank, and told Schroeder that Hauer wanted to invest in his business but that she needed short-term financing and could provide adequate collateral. Eilbes told Schroeder that he would use the money invested by Hauer in part to either bring the payments current on his defaulted loan or pay the loan off in full. Schroeder then called Hauer's stockbroker and financial consultant, Stephen Landolt, in an effort to verify the existence of Hauer's fund. Landolt told Schroeder that Hauer needed the interest income to live on and that he wished the Bank would not use it as collateral for a loan. Schroeder also conceded that it was possible that Landolt told him that Hauer was suffering from brain damage, but did not specifically recall that part of their conversation.

At some later date Eilbes met personally with Schroeder in order to further discuss the potential loan

to Hauer, after which Schroeder indicated that the Bank would be willing to loan Hauer $30,000. Schroeder gave Eilbes a loan application to give to Hauer to fill out. On October 26, 1989, Hauer and Eilbes went to the Bank to meet with Schroeder and sign the necessary paperwork. Prior to this date, Schroeder had not spoken to or met with Hauer. During this meeting Schroeder explained the terms of the loan to Hauer—that she would sign a consumer single-payment note due in six months and give the Bank a security interest in her mutual fund as collateral. Schroeder did not notice anything that would cause him to believe that Hauer did not understand the loan transaction.

On April 26, 1990, the date the loan matured, Hauer filed suit against the Bank and Eilbes. Hauer subsequently amended her complaint three times. The Bank filed a counterclaim for judgment on the defaulted loan after Hauer's first amended complaint. In Hauer's third amended complaint, she alleged the following specific causes of action: (1) the Bank knew or should have known that she lacked the mental capacity to understand the loan, (2) the Bank intentionally misrepresented, negligently misrepresented, or misrepresented the circumstances surrounding the loan on which she relied, and (3) the Bank breached a fiduciary duty owed to her.

On January 7, 1992, the Bank moved for summary judgment on the grounds that Hauer failed to state any claim for which relief could be granted. The trial court granted summary judgment in part by dismissing Hauer's misrepresentation claims. However, the court held that the pleadings stated the following causes of action which required factual determinations: (1) Hauer lacked the mental capacity to enter into the loan

agreement and the Bank knew or should have known about her condition, (2) the Bank breached its duty of good faith and fair dealing under § 401.203, STATS., and (3) the Bank had a fiduciary duty to Hauer and breached that duty.

Prior to trial and over the Bank's objection, Hauer dismissed Eilbes because he appeared to be judgment proof and was filing bankruptcy. A twelve-person jury subsequently found that Hauer lacked the mental capacity to enter into the loan and that the Bank failed to act in good faith toward Hauer in the loan transaction. The trial court denied the Bank's motions after verdict and entered judgment voiding the loan contract, dismissing the Bank's counterclaim and ordering the Bank to return Hauer's collateral. The Bank appeals.

In addition to voiding the contract, Hauer also sought damages arising out of the Bank's conduct for punitive damages and actual attorney's fees. The trial court refused to submit questions to the jury regarding punitive damages. Further, the trial court ruled postverdict that Hauer was not entitled to actual attorney's fees. Hauer cross-appeals from these adverse rulings. We will discuss further facts as we discuss the appellate issues.

## II. MENTAL CAPACITY TO CONTRACT

Over the Bank's objection, the jury was presented with the following special verdict question: Did the plaintiff, Kathy Hauer, lack the mental capacity to enter into the loan transaction at the time of that transaction? The jury answered this question, "Yes." In denying the Bank's motions after verdict, the trial court held that based on this finding, the note and security agreement were "void or voidable." Further,

587

the court ruled that Hauer was not liable for repayment of the $30,000 loan because she no longer possessed the funds.

The Bank in its motions after verdict and on appeal argues that the jury's verdict as to mental incompetency is invalid. The Bank contends that Hauer failed to state a claim upon which relief can be granted or, in the alternative, that the evidence does not support the jury's verdict.

### A. Mental Incompetence—Cause of Action

We first address the Bank's argument that Hauer's claim of mental incompetence fails to state a claim for which relief can be granted. This presents a question of law which we review independently. *Peterman v. Midwestern Nat'l Ins. Co.*, 177 Wis. 2d 682, 697, 503 N.W.2d 312, 318 (Ct. App. 1993). The Bank contends that a claim of mental incompetence is an affirmative defense to an action to enforce a contract only and that Hauer cannot avail herself of such a defense because she failed to plead any affirmative defenses. We disagree.

We have previously recognized that the vast majority of courts have held that an incompetent person's transactions are voidable—the incompetent has the power to avoid the contract entirely. *See Production Credit Ass'n v. Kehl*, 148 Wis. 2d 225, 229-30, 434 N.W.2d 816, 818 (Ct. App. 1988); *see also* 5 SAMUEL WILLISTON, WILLISTON ON CONTRACTS § 10:3 (4th ed. 1993). Further, Wisconsin has long recognized a cause of action to rescind a contract or conveyance based upon the lack of mental competency at the time of the transaction. *See, e.g., First Nat'l Bank v. Nennig*, 92

588

Wis. 2d 518, 521, 285 N.W.2d 614, 616 (1979).[1] Accordingly, we conclude that Hauer properly stated a cause of action to void the loan contract.

## B. Sufficiency of the Evidence

The Bank argues that even if Hauer has a cause of action to void the contract based upon the lack of mental capacity, the record is devoid of credible evidence to sustain the jury's verdict. In reviewing a jury's verdict, we will sustain the verdict if there is any credible evidence to support it. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). The weight and credibility of the evidence are left to the province of the jury. *Id.* When the evidence permits more than one inference, this court must accept the inference that favors the jury's verdict. *Id.* at 305-06, 347 N.W.2d at 598.

The law presumes that every adult person is fully competent until satisfactory proof to the contrary is presented. *First Nat'l Bank*, 92 Wis. 2d at 529-30, 285 N.W.2d at 620. The burden of proof is on the person seeking to void the act. *Nyka v. State*, 268 Wis. 644, 646, 68 N.W.2d 458, 460 (1955). The test for determining competency is whether the person involved had sufficient mental ability to know what he or she was doing and the nature and consequences of the transac-

---

[1] *See also Burnham v. Mitchell*, 34 Wis. 117 (1874) (recognizing incompetence as a cause of action to reinstate a debt forgiven by an incompetent); *Casson v. Schoenfeld*, 166 Wis. 401, 406, 166 N.W. 23, 24 (1918); *Harlow v. Kingston*, 169 Wis. 521, 522, 173 N.W. 308, 309 (1919) (recognizing incompetence as a cause of action to rescind a deed); *Nyka v. State*, 268 Wis. 644, 68 N.W.2d 458 (1955).

tion. *First Nat'l Bank*, 92 Wis. 2d at 530, 285 N.W.2d at 620; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 15(1)(a) (1979). Almost any conduct may be relevant, as may lay opinions, expert opinions and prior and subsequent adjudications of incompetency. RESTATEMENT, *supra*, at § 15 cmt. c.

Our review of the record reveals that there is credible evidence which the jury could have relied on in reaching its verdict. First, it is undisputed that Hauer was under court-appointed guardianship approximately one year before the loan transaction. Second, Hauer's testimony indicates a complete lack of understanding of the nature and consequences of the transaction.[2] Third, Hauer's psychological expert, Charles Barnes, testified that when he treated her in 1987, Hauer was "very deficient in her cognitive abilities, her abilities to remember and to read, write and spell . . . she was very malleable, gullible, people could convince her of almost anything." Barnes further testified that because Hauer's condition had not changed in any significant way by 1990 when he next evaluated her, she was "incompetent and . . . unable to make reasoned decisions" on the date she made the loan.

The Bank argues that Barnes's testimony was irrelevant and erroneously admitted because Viste, Hauer's treating neurologist, informed the court that in his opinion Hauer was no longer in need of a guardian and could manage her own affairs a year prior to

---

[2] For example, Hauer testified that she believed that she was merely cosigning a loan for Eilbes and that he was responsible for paying it back.

the loan.[3] The Bank contends that Hauer should be judicially estopped from asserting incompetence at the time of the loan after convincing the court the previous year that she was competent. However, competency must be determined on the date the instrument was executed. *Production Credit*, 148 Wis. 2d at 230, 434 N.W.2d at 818.

The Bank further points out that both Eilbes and Schroeder testified that Hauer was much different at trial than she was on the day the loan was executed. Nevertheless, the weight and credibility of the evidence are for the jury to decide, not this court. The jury apparently gave more credence to Hauer's and Barnes's testimony than Schroeder's testimony and Viste's 1988 opinion. In sum, while we agree that there is evidence which the jury could have relied on to find that Hauer was competent, we must accept the inference that favors the jury's verdict when the evidence permits more than one inference. *Fehring*, 118 Wis. 2d at 305-06, 347 N.W.2d at 598.

## III. EFFECT OF INCOMPETENCE

Having concluded that Hauer stated a claim for relief and that sufficient credible evidence was presented to sustain the jury's verdict, we now turn to the unresolved problem regarding the rights and responsibilities of the parties relative to the disposition of the consideration exchanged in the loan transaction. We must decide the legal question of whether Hauer may recover her collateral without liability for the loan

[3] Over the Bank's objection, a portion of Viste's deposition was read at trial, where Viste concluded that based on Barnes's opinion, he had erred in finding that Hauer was competent and no longer in need of a guardian in 1988.

proceeds. We review questions of law independently of the trial court. *State v. Jason J.C.*, 181 Wis. 2d 868, 872-73, 512 N.W.2d 522, 524 (Ct. App. 1994).

Postverdict, the trial court ruled that Hauer's action to void the contract required the Bank to return her collateral and Hauer to return any loan proceeds in her possession. However, it is undisputed that Hauer loaned the entire $30,000 to Eilbes and that the money had long since disappeared. On appeal, the Bank contends that equity dictates that the proper remedy upon voiding the loan transaction is to return the parties to their preloan status—the Bank must return Hauer's stocks and Hauer must be held liable to the Bank for $30,000.

The trial court offered two explanations for voiding the contract but not holding Hauer liable for repayment of the loan: (1) the law and policy of the "infancy doctrine" set forth in *Halbman v. Lemke*, 99 Wis. 2d 241, 298 N.W.2d 562 (1980), and (2) the jury's finding that the Bank failed to act in good faith. We will address each in turn.

## A. Infancy Doctrine

In *Halbman*, our supreme court held that a minor who disaffirms a contract may recover the purchase price without liability for use, depreciation or other diminution in value. *Id.* at 251, 298 N.W.2d at 567. As a general rule, a minor who disaffirms a contract is expected to return as much of the consideration as remains in the minor's possession. However, the minor's right to disaffirm is permitted even where the minor cannot return the property. *Id.* at 245-46, 298 N.W.2d at 565. The trial court ruled that the infancy

592

doctrine was analogous and applies when the voidness arises from mental incapacity to contract. We disagree.

The purpose of the infancy doctrine is to protect "minors from foolishly squandering their wealth through improvident contracts with crafty adults who would take advantage of them in the marketplace." *Id.* at 245, 298 N.W.2d at 564. The common law has long recognized this policy to protect minors. *Id.* However, "[a] contract made by a person who is mentally incompetent requires the reconciliation of two conflicting policies: the protection of justifiable expectations and of the security of transactions, and the protection of persons unable to protect themselves against imposition." RESTATEMENT, *supra,* § 15 cmt. a.

The trial court's analogy fails given the fact that the two types of incapacity are essentially dissimilar. WILLISTON, *supra*, § 10:3. "An infant is often mentally competent in fact to understand the force of his bargain, but it is the policy of the law to protect the minor. By contrast, the adult mental incompetent may be subject to varying degrees of infirmity or mental illness, not all equally incapacitating." *Id.* This difference in part accounts for the majority of jurisdictions holding that absent fraud or knowledge of the incapacity by the other contracting party, the contractual act of an incompetent is voidable by the incompetent only if avoidance accords with equitable principles. *Id.* Accordingly, we conclude that the infancy doctrine does not apply to cases of mental incompetence.

### B. *Good Faith*

The jury was presented with the following special verdict question: "Did the defendant, Union State Bank of Wautoma, fail to act in good faith toward

[Hauer] in the loan transaction?" The jury answered that question, "Yes." In denying the Bank's motions after verdict, the court concluded that even if the infancy doctrine did not apply, the jury's finding that the Bank failed to act in good faith in the loan transaction distinguished this case from the "general rule" providing that the person seeking relief from a contract must return the consideration paid. We agree. Before we address this issue, however, we must first deal with the Bank's preliminary arguments concerning the applicability of "good faith."

### 1. Tort v. Contract

At the outset, we note that there was much confusion among the parties and the trial court over what theory of law Hauer was basing her claim for recovery,[4] and this confusion extends to the parties' arguments on appeal. This is due in large part to the parties' intermingling of tort and contract principles.[5]

Wisconsin law recognizes differences between civil actions for breach of contract and tort. *Autumn Grove Joint Venture v. Rachlin*, 138 Wis. 2d 273, 281, 405 N.W.2d 759, 763 (Ct. App. 1987). Where a contract is involved, in order for a claim in tort to exist, a duty must exist independently of the duty to perform under the contract, such as a fiduciary relationship. *Id.* at 281

---

[4] The trial court lamented this fact in motions after verdict: "I think it is fair to say any case in which the attorneys [do] not have the same theories the day before trial is likely to be a disaster throughout and that seems to have been the situation in this one."

[5] For example, Hauer begins her appellate argument by asserting that whether the Bank's violation of its contractual duty of good faith "is founded in tort or contract is immaterial."

& n.6, 405 N.W.2d at 763. Although Hauer alleged in her pleadings that the Bank had a fiduciary relationship, this claim was dismissed upon the Bank's motion for directed verdict after Hauer presented her evidence. Hauer does not challenge this ruling on appeal, and we are therefore left solely with contract issues.

The Bank's first argument on appeal is that the special verdict question regarding whether the Bank acted in good faith was erroneous because Wisconsin does not recognize a cause of action in tort for "lack of good faith." The Bank contends that because Wisconsin does not recognize a tort of "lack of good faith" or "bad faith" outside of insurance cases, *see Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 423, 405 N.W.2d 354, 365 (Ct. App. 1987), the trial court should have dismissed this cause of action.

Based upon the discussion above, it is evident that this argument is misguided. We agree with the Bank that Wisconsin has not recognized a cause of action in tort for lack of good faith or "tortious breach of contract." *See Autumn Grove*, 138 Wis. 2d at 281 n.6, 405 N.W.2d at 763. However, that is not the issue in this case. While it is true that there were some pretrial discussions regarding a potential tort claim, it is clear that the action was ultimately tried and presented to the jury under contract theories, not a tort of bad faith. This was understood by both parties at various points prior to trial, although rarely simultaneously.

2. Section 401.203, STATS.

The question of good faith was further complicated in this case by the trial court's ruling on summary judgment that Hauer's complaint stated a cause of action based on the Bank's duty of good faith and fair

595

dealing pursuant to § 401.203, STATS.[6] We will address this claim next.

Section 401.203, STATS., is a general provision of Wisconsin's Uniform Commercial Code. According to § 401.203, "[e]very contract or duty within [the Uniform Commercial Code] imposes an obligation of good faith in its *performance or enforcement*." (Emphasis added.) However, at issue in this case is the Bank's good faith in the *formation* of the contract with Hauer. Because the general requirement of good faith under this section applies only to the performance or enforcement of a contract, it does not impose a duty of good faith in the negotiation and formation of contracts. *See* Robert S. Summers, *"Good Faith" in General Contract Law and the Sales Provisions of the Uniform Commercial Code*, 54 VA. L. REV. 195, 220 (1968).

The trial court, therefore, erroneously created a cause of action under § 401.203, STATS. The concept of good faith in the Uniform Commercial Code was recently summarized as follows:

> The Uniform Commercial Code defines good faith as honesty in fact. Beyond that . . . good faith is another way to describe the effort to devise terms to

---

[6] The trial court in deciding the Bank's summary judgment motion held that "[t]he bank admits that, under sec. 401.203, it had a duty to act in good faith. The allegations as to its actions are sufficient to state a claim that it breached that duty." The Bank also argues that Hauer never pled that it breached a contractual duty of good faith and fair dealing and therefore cannot recover under such a theory. Because we conclude on other grounds that Hauer cannot recover based upon an independent cause of action under § 401.203, STATS., we decline to address this issue.

fill contractual gaps. As a method to fill gaps, it has little to do with the formation of contracts . . ..

*Continental Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir.) (citations omitted), *cert. denied*, 113 S. Ct. 816 (1992). Further, we note that even if § 401.203 is applicable, the comments accompanying the uniform law clearly demonstrate that § 401.203 does not support an independent cause of action for failure to act in good faith under a contract.[7]

---

[7] The official comment to § 401.203, STATS., states:

This section does not support an independent cause of action for failure to perform or enforce in good faith. Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power. *This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.* [Emphasis added.]

WIS. STAT. ANN. § 401.203 cmt. *See also* UNIF. COMMERCIAL CODE app. II § 1-203, 3B U.L.A. 27, 31 (Supp. 1994). As further explained by the editorial board for the Uniform Commercial Code:

The inherent flaw in the view that § 1-203 supports an independent cause of action is the belief that the obligation of good faith has an existence which is conceptually separate from the underlying agreement. . . . One acts in good faith relative to the agreement of the parties. . . . *Put differently, good faith merely directs attention to the parties' reasonable expectations; it is not an independent source from which rights and duties evolve.* [Emphasis added.]

3B U.L.A. at 30.

### 3. Mental Incompetency and Common Law Duty of Good Faith

Based on the above discussion, we agree with the Bank that Hauer did not have a *separate* cause of action for lack of good faith in tort or in contract under § 401.203, STATS. However, we disagree with the Bank that this ends the analysis. Rather, the concept of good faith is relevant to the effect of Hauer's successful claim to void the contract based on mental incompetence.

Wisconsin common law, like other states, reads the duty of good faith into every contract. *See Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 592 (7th Cir. 1991) (citing Wisconsin law). The great weight of authority from other jurisdictions provides that the unadjudicated mental incompetence of one of the parties is not a sufficient reason for setting aside an executed contract if the parties cannot be restored to their original positions, provided that the contract was made in good faith, for a fair consideration and without knowledge of the incompetence. WILLISTON, *supra*, § 10:3.

Stated differently, if the contract is made on fair terms and the other party has no reason to know of the incompetency, the contract ceases to be voidable where performance in whole or in part changes the situation such that the parties cannot be restored to their previous positions. RESTATEMENT, *supra*, § 15 cmt. f.[8] If, on

---

[8] RESTATEMENT (SECOND) OF CONTRACTS § 15(2) (1979) provides:

> Where the contract is made on fair terms and the other party is without knowledge of the mental illness or defect, the power of

the other hand, the other party knew of the incompetency or took unfair advantage of the incompetent, consideration dissipated without benefit to the incompetent need not be restored. *Id.* at cmt. e.

The Bank asserts that "[i]f a contract is entered into between two adults, each of whom has no actual knowledge of incompetence about the other, it would produce profound, unfair and inequitable results if that contract . . . becomes void and leaves one party with absolutely no remedy or recourse to be returned to their precontract condition." We agree with this statement on its face. However, the Bank's argument assumes a material fact at issue—whether the Bank knew that Hauer was mentally incompetent at the time of the loan. Further, the question of knowledge is not limited to "actual knowledge," but also includes whether the Bank had reason to know of the incompetence. *See* RESTATEMENT, *supra*, § 15(1)(b); *see also Casson*, 166 Wis. at 406, 166 N.W. at 24 (cause of action existed where mental incompetence was "known or ought to have been known by the defendants").

Whether the Bank knew or had reason to know that Hauer was incompetent is a question of fact for the jury to decide. Inexplicably, the Bank neither requested a special verdict question regarding its knowledge nor objected to the form of the special verdict on the grounds that it lacked a question pertaining

avoidance [based on mental incompetency] terminates to the extent that the contract has been so performed in whole or in part or the circumstances have so changed that avoidance would be unjust.

to knowledge.[9] This is true despite the fact that *Hauer* in her proposed special verdict submitted a question regarding the Bank's knowledge,[10] and that the trial court concluded at the summary judgment stage that there was a dispute of material fact as to whether the Bank had knowledge of Hauer's incompetence.[11]

Because the bulk of the jury instruction/special verdict conference was not recorded as required by § 805.13(3), STATS., we are at a loss to explain why a question regarding the Bank's knowledge was not submitted to the jury. The first time we note that the Bank

---

[9] In response to the court's inquiry whether the parties had any objection to the proposed special verdict, the Bank's counsel stated: "We understand how you have interpreted the issues in this case, Your Honor, and without waiving our previous objections, we understand and accept the form of the special verdict as you have prepared it." We note that the Bank objected throughout the proceedings on the grounds that it did not believe that there were two separate causes of action—specifically, that there was no cause of action based on mental incompetence. However, the record fails to indicate any time where the Bank objected to the lack of a special verdict question regarding its knowledge.

[10] Hauer's proposed special verdict form stated in part:

QUESTION NO. 1: Was the plaintiff, Kathy Hauer, at the time of the loan, suffering from diminished mental capacity?

QUESTION NO. 2: If your answer to Question No. 1 was "yes", then answer this question:

Did the Union State Bank of Wautoma, through its officers or employees, know or should have known that the plaintiff, Kathy Hauer, was suffering from diminished mental capacity?

[11] The trial court stated, "As to the summary judgment, I indicated there was a dispute over material fact as to whether she was incompetent and whether there was knowledge and that's a factual issue."

600

specifically objected to the lack of a question pertaining to its knowledge is in its motions after verdict where it alleges that the obligation of good faith "is not a separate cause of action in tort and cannot be established absent proof of knowledge by the Bank of the plaintiff's incompetence." However, "[f]ailure to object at the conference constitutes a waiver of any error in the proposed . . . verdict." Section 805.13(3). Because counsel failed to object to the form of the special verdict, the trial court did not have an opportunity to correct the error and submit a proper verdict question to the jury. *See Vollmer v. Luety*, 156 Wis. 2d 1, 11, 456 N.W.2d 797, 802 (1990). In the absence of a specific objection which brings into focus the nature of the alleged error, a party has not preserved its objections for appeal. *See id.* at 10, 456 N.W.2d at 801.

The Bank argues that it does not have an affirmative duty to inquire into the mental capacity of a loan applicant to evaluate his or her capacity to understand a proposed transaction. We agree. However, a contracting party exposes itself to a voidable contract where it is put on notice or given a reason to suspect the other party's incompetence such as would indicate to a reasonably prudent person that inquiry should be made of the party's mental condition. *See Hedgepeth v. Home Savs. and Loan Ass'n*, 361 S.E.2d 888, 889-90 (N.C. App. 1987). As the trial court aptly stated: "I did not say there's any duty to make an investigation, but the bank takes a risk the contract will be . . . voidable if they know of facts which support the claim of inability to contract."

We agree that ideally the knowledge question should have been given to the jury as suggested in

Hauer's proposed special verdict. However, we are bound by the record as it comes to us. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26, 496 N.W.2d 226, 232 (Ct. App. 1993). We conclude that the finding that the Bank knew or had reason to know that Hauer was mentally incompetent to understand the nature of the loan at the time it was entered into is inherent and intertwined in the jury's finding that the Bank failed to act in good faith. This is necessarily true because the Bank could not have been found to have lacked good faith as a matter of law absent knowledge of the incompetency. The two findings are inseparable.[12]

### 4. Sufficiency of the Evidence

The last question we must address is whether there was any credible evidence to sustain the jury's verdict that the Bank failed to act in good faith. If there is, we are bound to sustain the jury's verdict. *Fehring*, 118 Wis. 2d at 305, 347 N.W.2d at 598.

The Bank contends that "[t]he record is devoid of any evidence that the Bank had knowledge of any facts which created a suspicion that it should not enter the loan." We agree with the trial court's summary that there is evidence in the record "that there were flags up that would prompt a reasonable banker to move more slowly and more carefully in the transaction."

---

[12] In this regard, we agree with the trial court's analysis that:

> [To] the extent [the bank] had knowledge of a problem alleged to have existed, that may have some impact on their duty of good faith as opposed to an affirmative duty to look. . . .

> To the extent they knew of special conditions existing, that may bear on the good faith matter . . . .

For example, the Bank knew that Eilbes was in default of his loan at the Bank. Eilbes approached the Bank and laid all the groundwork for a loan to be given to a third-party investor, Hauer, whom the Bank did not know. Eilbes told Schroeder that he would make his defaulted loan current or pay it off entirely with Hauer's investment. Schroeder testified that upon investigating the matter initially, Hauer's stockbroker told him not to use Hauer's fund as collateral because she needed the fund to live on and Hauer could not afford to lose the fund. He further testified that it was possible that the stockbroker told him that Hauer suffered a brain injury. In addition, Hauer's banking expert opined that the Bank should not have made the loan. Accordingly, we conclude that the evidence and reasonable inferences that can be drawn from the evidence support the jury's conclusion that the Bank failed to act in good faith.

## IV. CROSS-APPEAL

In her cross-appeal, Hauer first argues that the trial court erred in failing to submit the issue of punitive damages to the jury and that this court should "exercise [its] equitable powers and assess punitive damages against the Bank." We disagree. We stated at the outset that this matter was tried under contract theories. As we have stated previously, "[W]e know of no cases . . . which have allowed the recovery of punitive damages in a breach of contract action without an underlying tort." *Autumn Grove*, 138 Wis. 2d at 280 n.4, 405 N.W.2d at 763.

Hauer next argues that the trial court erred in failing to grant her actual attorney's fees. Under the American Rule, litigants have no obligation to pay other litigants' attorneys' fees unless a statute or contract specifically provides otherwise. *Elliot v. Donahue*, 169 Wis. 2d 310, 323, 485 N.W.2d 403, 408 (1992). On appeal, Hauer contends that § 425.308, STATS., applies in this case, which provides that a prevailing customer in a consumer credit transaction shall recover actual attorney's fees. We agree with the Bank that not only did Hauer not plead this as a basis for recovery, she stated on the record that the statute did not apply.[13] We therefore deem this issue waived.

Hauer also contends that the circumstances surrounding this case present a situation where the equitable solution would be to award her actual attorney's fees. In denying Hauer's request for attorney's fees, the trial court stated:

> As to the attorney fees, there has to be some showing of some bad faith, fraud, deliberate dishonesty, or malice, and I do not find those to have been shown. I don't even find recklessness to a degree sufficient to meet the burden of overcoming the general [American] Rule.

We do not consider the trial court's factual findings to be clearly erroneous. Accordingly, we see no grounds to support Hauer's request for attorney's fees, either by statute, contract or equity.

---

[13] This concession was based on the fact that § 421.202(6), STATS., excludes recovery of attorney's fees in cases where the consumer credit transaction exceeds $25,000. Hauer borrowed $30,000.

*By the Court.*—Judgment affirmed.