HAGEDORN, J.
¶ 1 A jury concluded that Raymond Jones, Sr., was incompetent when he entered into two contracts to sell real estate to Brian Pizon. Pizon appeals from a judgment invalidating the transfers on several grounds. Most notably, he argues that incompetency to enter a contract must be proven by clear and convincing evidence, not by the greater weight of the credible evidence as the jury was instructed. Pizon also takes issue with the court's decision to allow certain testimony regarding Jones' competence and the court's denial of a motion for mistrial. We find no error in the proceedings and affirm.
BACKGROUND
¶ 2 Jones owned two parcels of land in Oshkosh-a thirty-acre parcel and a five-acre parcel. Jones listed the parcels for sale in late 2014 for $689,000 and $199,000 respectively.[1] The thirty-acre parcel had an appraised value of $155,000, and the five-acre parcel had an appraised value of $38,000. The first offer Jones received was from Pizon on May 14, 2015, who offered to buy the thirty-acre parcel for $100,000-substantially lower than the appraised value and list price. Jones initially rejected the offer, but changed his mind after a few days. Pizon closed on the thirty-acre parcel on June 4, 2015. While the parties were still in the title building, Pizon also offered to purchase the five-acre parcel for $16,500-again, substantially below both the appraised value and the list price. Jones accepted this offer, and the parties closed on June 16, 2015.
¶ 3 Less than two weeks after the sales closed, Jones was placed under emergency protective placement due to dementia. His son was eventually appointed as his guardian and brought this lawsuit to undo the transactions. Jones argued that he did not have "sufficient mental ability to know what he was doing when he signed the offers to purchase, deeds, closing statements and other documents related to the transfer of the" properties.
¶ 4 The action proceeded to a two-day jury trial where numerous witnesses testified. Jones presented evidence of a number of incidents calling into question his mental capacity around the time of the contracts. The following are some of the noteworthy incidents:
• On April 11, 2015, police were called after Jones-while pounding on his neighbor's door-shouted a number of statements to the effect of "she left me for a lesbian, she needs to go see Perry before she gets hurt and I used to be married to her and [she] left me with three kids." Jones' wife was deceased. The police report indicated that it appeared Jones was suffering from "early dementia or [A]lzheimer symptoms."
• On April 24, 2015, police performed a welfare check prompted by Jones showing up at a hospital in a confused state to look for a friend who was not there. During the check, Jones identified his internet modem as his phone and could not explain how to use his telephone.
• On May 13, 2015-one day prior to Pizon's first offer-Jones went to the sheriff's department to report he thought someone had broken into his home and stolen his wallet. The deputy who took the report testified that Jones "was somewhat hard to understand meaning that he was kind of confused." Upon investigating Jones' residence, the deputy found no signs of break in, and the wallet was found in the bathroom.
• On May 26, 2015, Jones' next-door neighbor became concerned and contacted social services. She testified that Jones had exhibited some strange behavior around late April through May. Jones had wrapped his phone in aluminum foil and put it in the refrigerator "[a] couple times," had pulled wires out of a working television, and would visit the neighbor several times a day to report that his wife was having heart surgery. Once, Jones came to the neighbor's house and brought over a wad of cash. The neighbor also testified that Jones had barricaded himself in his garage.
• On June 5, 2015, the day after closing on the thirty-acre parcel, Jones caused an accident by failing to yield. When questioned about the accident, Jones misstated the date as April 18, 2005. Jones could not remember who the president was or his ethnicity.
• On June 22, 2015, five days after closing on the five-acre parcel, a neighbor reported that Jones was outside and confused. Police assisted Jones in getting back inside his home.
• On June 27, 2015, police were again called due to Jones visiting a neighbor's home in an agitated state four to five times worried that someone was stealing his mail.
• On June 29, 2015, police were called for another welfare check because neighbors had seen Jones climbing in and out of his front window.
¶ 5 Pizon countered by producing four witnesses who had observed Jones around the time of the contested real estate transactions. Jones' real estate listing agent testified she did not "notice anything unusual or erratic or uncommon" about Jones' behavior from late 2014 through early to mid June 2015. She was present at both closings. Two closing agents similarly testified they did not observe anything out of the ordinary with Jones' behavior during the closings; both testified that Jones had no trouble understanding the closing process. Finally, a lifelong friend of Jones who accompanied him to both closings testified that Jones seemed excited to make the deal. She averred that she observed nothing suggesting Jones was not in possession of his faculties.
¶ 6 Both Pizon and Jones introduced expert testimony regarding Jones' mental condition at the time he entered into the contracts to sell the parcels, setting up a battle of the experts. Pizon presented the testimony of Dr. Deborah Collins. After reviewing Jones' history, Collins testified there was no "support for a conclusion that at the times in question Mr. Jones was not competent." Jones presented the testimony of Dr. Allen Hauer; it is this testimony Pizon challenges on appeal. Hauer offered a contrary view to that of Collins, stating that Jones was "definitely incompetent" long before June 2015 due to dementia. He explained that Jones' dementia, apparent when he was placed under emergency protective placement on June 29, "did not appear overnight" or "in the last month" but was "a persistent and deteriorating condition that has an onset" of at least one year prior. When asked about Jones' seemingly normal behavior at times, Hauer dismissed those instances as mere "apparent lucidity." Hauer opined that Jones could not make rational decisions due to his condition despite appearing lucid at times. Hauer explained that around the time of the transactions "any lucid, rational moment was brief and that [Jones'] actions during that time ... were not products of rational and considered thought and planning."
¶ 7 At the close of evidence, Pizon sought a jury instruction to the effect that incompetency must be proven by "clear, convincing, and satisfactory evidence." The circuit court did not give Pizon's desired instruction. Rather, the jury was instructed that the burden of proof was the greater weight of the credible evidence. The jury concluded Jones was mentally incompetent when he signed the contracts to sell the two parcels. The circuit court entered judgment accordingly, ordering the parcels returned to Jones and the purchase price refunded. Pizon appeals.
DISCUSSION
¶ 8 We address three arguments.[2] First, Pizon argues the circuit court incorrectly instructed the jury regarding the burden of proof. Second, he maintains that the court erroneously exercised its discretion by allowing Hauer to testify. And finally, he insists the court should have granted his motion for mistrial when Jones had to be removed from the courtroom for being disruptive. None of these arguments are availing, and we affirm.
A. Burden of Proof
¶ 9 "Wisconsin has long recognized a cause of action to rescind a contract or conveyance based upon the lack of mental competency at the time of the transaction." Hauer v. Union State Bank of Wautoma , 192 Wis. 2d 576, 588, 532 N.W.2d 456 (Ct. App. 1995). The law presumes every person is fully competent to enter into contracts until proof to the contrary is presented. First Nat'l Bank of Appleton v. Nennig , 92 Wis. 2d 518, 529-30, 285 N.W.2d 614 (1979). The party seeking to void the contract or conveyance bears the burden to prove incompetency. Hauer , 192 Wis. 2d at 589. "The test of competency is, did the person involved have sufficient mental ability to know what he was doing and the nature of the act done." Nennig , 92 Wis. 2d at 530. Almost any conduct on the part of the person whose competency is being questioned may be relevant, in addition to lay and expert testimony and prior and subsequent adjudications of incompetency. Hauer , 192 Wis. 2d at 590.
¶ 10 Pizon argues we should "establish that, in cases challenging competency to contract (including executing deeds), the clear and convincing burden of proof must be satisfied." Pizon claims that "there is no appellate case in Wisconsin that specifically establishes the proper burden of proof in a case in which one contends that a contract is void due to a lack of mental capacity." Accordingly, he appeals to competency assessments in other areas, like testamentary capacity, guardianship, and civil commitment, which require clear and convincing proof of mental incapacity. Pizon further asserts, "Numerous other jurisdictions and at least one leading treatise also have adopted the heightened" burden of proof. Because the circuit court instructed the jury that the burden of proof was "the greater weight of the credible evidence," Pizon maintains that we must reverse the judgment.
¶ 11 Our cases have long established the general rules governing the burden of proof in civil actions. The ordinary standard is proof by a "fair" or "mere" preponderance of the evidence. See Ball v. Boston , 153 Wis. 27, 35, 141 N.W. 8 (1913) ; State v. Robert Walberg , 109 Wis. 2d 96, 102, 325 N.W.2d 687 (1982). But in certain cases, our courts have determined public policy requires a higher standard of proof-the clear and convincing evidence standard. Walberg , 109 Wis. 2d at 102. This higher standard applies where the act is a crime under state law, in cases of fraud and undue influence, and in testamentary claims. Id. ; Boston , 153 Wis. at 35. Again, these principles are of long standing.
¶ 12 Contrary to the parties' assertions, it appears our supreme court has answered the question regarding the proper standard in cases such as this one. In Nyka v. State , 268 Wis. 644, 645-46, 68 N.W.2d 458 (1955), the plaintiffs brought an action to set aside a deed on the grounds that the grantor was incompetent at the time the deed was transferred. Quoting American Jurisprudence, the court explained that the law will presume competency "until satisfactory proof to the contrary is presented." Id. at 646 (citation omitted). Still quoting American Jurisprudence, the court addressed the burden of proof.
The rule, with relation to the burden of proof of insanity, is generally stated to be that the burden of proof to establish insanity rests with the party who alleges it or seeks to avoid an act on account of insanity. It devolves upon such party to establish the factum of insanity by a preponderance of the evidence .
Id. (emphasis added; citation omitted).
¶ 13 As noted, Wisconsin cases have long distinguished between preponderance of the evidence and clear and convincing (or, as it was often called in older cases, "clear and satisfactory") evidence. See Boston , 153 Wis. 27 at 35 ; see also Guldhaug v. Martin , 275 Wis. 380, 384, 82 N.W.2d 196 (1957) (explaining that testamentary incapacity must be proven by "clear and satisfactory evidence"). Our cases have explained that proof by a fair preponderance of the evidence is identical to the current "greater weight of the credible evidence" language. Nommensen v. American Cont'l Ins. Co. , 2001 WI 112, ¶16, 246 Wis. 2d 132, 629 N.W.2d 301 (quoting WIS JI- CIVIL 200 cmt.).[3] In light of the fact that the court in Nyka was well aware of the varying standards-including the standards for incapacity in other contexts like testamentary issues-the only way to read this language is that it was invoking the ordinary burden of proof in civil actions.[4]
¶ 14 And contrary to Pizon's assertions, this view is not an outlier. Several treatises explain that jurisdictions are split as to the burden of proof applicable to challenges to contractual capacity. See 53 AM. JUR. 2D Mentally Impaired Persons § 157 (May 2018 update) ("The burden of proof is on the individual asserting a lack of capacity to contract, and this burden may be satisfied by clear and convincing evidence or a preponderance of the evidence."); 17 C.J.S. Contracts § 988 (June 2018 update) ("One who alleges the mental incapacity of a party to a contract usually must establish it by a preponderance of the evidence, although clear and convincing evidence ... may be required.").
¶ 15 Our supreme court later confirmed that Nyka 's analysis concerning the presumption of sanity to execute a deed was equally applicable to whether a person was competent to enter into a contract. Nennig , 92 Wis. 2d at 529-30 (citing Nyka , 268 Wis. at 646, for the proposition that "[t]he law presumes competency rather than incompetency; it will presume that every person is fully competent until satisfactory proof to the contrary is presented"). We have similarly cited Nyka for the presumption of competency and the burden of proof. Hauer , 192 Wis. 2d at 589 (citing Nyka , 268 Wis. at 646, for the proposition that the law presumes competency and the burden to prove otherwise rests with "the person seeking to void the act").
¶ 16 Thus, until and unless the supreme court withdraws or modifies Nyka 's language, a person seeking to set aside a conveyance based on lack of capacity-as distinct from fraud or undue influence-must prove lack of competence by a preponderance of the evidence, or, as our current jury instructions state, by "the greater weight of the credible evidence." See WIS JI- CIVIL 200. That is what the jury was instructed here. Because we are bound by Nyka , Pizon's arguments concerning the wisdom of imposing a heightened standard are best addressed to the supreme court.
B. Expert Testimony
¶ 17 Pizon next takes issue with the circuit court's admission of Hauer's expert testimony. He claims that Hauer's opinion was not based on any scientific or medical authority and suggests that Hauer's opinion is not recognized in the field of psychology. He also claims that Hauer's opinion on "apparent lucidity" contradicts established Wisconsin law.[5]
¶ 18 As with most evidentiary decisions, the court's decision to admit or exclude expert testimony is discretionary and will not be reversed unless the court erroneously exercised its discretion. State v. Giese , 2014 WI App 92, ¶ 16, 356 Wis. 2d 796, 854 N.W.2d 687. We must affirm if the court rationally applies the correct legal standard to the facts of the case. Id.
¶ 19 WISCONSIN STAT. § 907.02 governs the admissibility of expert testimony, adopting the reliability standards the United States Supreme Court explained in Daubert v. Merrell Dow Pharms., Inc. , 509 U.S. 579 (1993). Giese , 356 Wis. 2d 796, ¶ 17. Section 907.02 provides:
(1) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a [qualified] witness ... may testify thereto ... if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.
Sec. 907.02(1). Under this standard, the circuit court acts as the "gate-keeper ... to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues." Giese , 356 Wis. 2d 796, ¶ 18.
¶ 20 The standard is flexible, and the court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael , 526 U.S. 137, 152 (1999). The court may consider a variety of factors. Giese , 356 Wis. 2d 796, ¶ 18. "The focus [of the court's inquiry] must be solely on principles and methodology, not on the conclusions that they generate." Daubert , 509 U.S. at 595 ; see also Giese , 356 Wis. 2d 796, ¶ 18.
¶ 21 Our supreme court recently addressed the admissibility standard for "expert medical testimony based on a witness's personal experience"-as was given here. Seifert v. Balink , 2017 WI 2, ¶66, 372 Wis. 2d 525, 888 N.W.2d 816. While the circuit court may not simply "tak[e] the expert's word for it," the supreme court affirmed that "experience-based expert evidence may pass muster as a method under [ WIS. STAT. § 907.02 's] reliability requirement." Balink , 372 Wis. 2d, ¶¶ 67, 74 (citation omitted). This is particularly true of medical testimony, which, the court explained, is "frequently admit[ted] ... based on experience alone." Id. , ¶ 77. "In certain fields, experience is the predominant, if not sole, basis" for reliable expert testimony, and "[m]edicine is an example of such a field because medicine 'is based on specialized as distinguished from scientific knowledge.' " Id. , ¶¶ 77-78 (citation omitted). Thus, the circuit court's reliability inquiry "may focus upon [the expert's] personal knowledge or experience." Id. , ¶ 78 (citation omitted). An expert's specific testimony need not necessarily "be subject to peer review" nor does the expert necessarily need to rely on medical literature to support his or her views. Id. , ¶¶ 83-84. The court finally explained that "exclusion [based on the reliability of methodology] is rarely justified in cases involving medical experts." Id. , ¶ 85. "Instead of exclusion, the appropriate means of attacking 'shaky but admissible' experience-based medical expert testimony is by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.' " Id. , ¶ 86 (alteration in original; citation omitted).
¶ 22 We reject Pizon's suggestion that Hauer was required to cite articles or other extrinsic sources to support his conclusion. He clearly testified based on his experience as a "clinical psychologist." His qualification as an experience-based expert in psychology was well demonstrated and uncontested by Pizon at trial.[6] And Pizon makes no argument before us that Hauer was not qualified. In this respect, Pizon makes much ado about nothing. As Seifert makes clear, it is unremarkable for a doctor to render an opinion without quoting a plethora of journals, peer-reviewed articles, or other doctors. His or her experience may suffice, and our case law has never required that medical testimony necessarily include reference to extrinsic sources. Nor do we see any merit to (or development of) the argument that Hauer's testimony finds no support in psychology.[7] See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).
¶ 23 We also reject Pizon's argument that Hauer's testimony disregarded Wisconsin law. It is true that "[t]he law recognizes the fact that there may be derangement of mind as to particular subjects, and yet capacity to act on other subjects." Boorman v. Northwestern Mut. Relief Ass'n , 90 Wis. 144, 148, 62 N.W. 924 (1895) (citation omitted). But, as Jones aptly points out in his brief, "Wisconsin law does not dictate that a person suffering from mental illness must experience periods of lucidity or that if a person appears to be lucid to a lay person, then that ... person must be lucid." The only thing recognized in Wisconsin law is that a person may be bound by a contract signed during a period of lucidity, which is completely consistent with Hauer's testimony and the given jury instructions. Hauer testified that, despite appearing lucid to those present at the closings, Jones was not competent given the diagnosis of dementia and his opinion concerning the time of onset. Nowhere did Hauer suggest that a person cannot legally have a lucid interval during which he or she may validly enter a contract. In fact, he agreed that "if [an] individual could form the capacity during a lucid interval to know that the individual is conveying property and the nature of such act," that person would have the "mental capacity to grant a deed." Pizon's argument mischaracterizes Hauer's testimony.
C. Mistrial
¶ 24 Pizon finally argues that the circuit court should have granted his motion for mistrial after Jones appeared in court on the first day of trial and had to be removed for being disruptive. Pizon moved for mistrial immediately, and the circuit court denied the motion, electing instead to grant a curative instruction. The court explained that "the encounter was fairly minor" and Jones had not been "particularly disruptive." After the incident, the court admonished the jurors to "free yourselves of any feelings of bias, prejudice, [or] sympathy" and instructed them that the issue was "the condition of Mr. Jones" at the time of the disputed transactions.
¶ 25 The decision of whether to grant a mistrial is committed to the circuit court's discretion, "and we accord great deference to a trial court's decision on a motion for mistrial." Broadhead v. State Farm Mut. Auto. Ins. Co. , 217 Wis. 2d 231, 239-40, 579 N.W.2d 761 (Ct. App. 1998). The decision to grant a motion for mistrial "involves a variety of factors" such as the nature of the case, the emphasis on the prejudicing event, references to the event made in argument, and the likely impact or effect upon the jury. See Rodriguez v. Slattery , 54 Wis. 2d 165, 170, 194 N.W.2d 817 (1972). The circuit court "is in a particularly good 'on-the-spot' position to evaluate [those] factors." Id. "[A] major reason circuit courts are given discretionary authority over matters that involve evaluation of the circumstances surrounding a trial is that the circuit court judge is present at trial and is therefore better able to understand what occurred." Schultz v. Darlington Mut. Ins. Co. , 181 Wis. 2d 646, 657, 511 N.W.2d 879 (1994).
¶ 26 Other than the conclusory assertion that "[t]he damage ... could not be undone by a simple instruction," Pizon offers little reason why the circuit court's assessment of the incident was incorrect. "We presume that the jury follows the instructions given to it." State v. Truax , 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). The court here clearly instructed the jury that, whatever Jones' mental condition might be at the time of trial, the relevant issue was his mental capacity at the time of the transactions. Whether to grant Pizon's motion for mistrial was a judgment call heavily dependent on the circuit court's first-hand assessment of the impact Jones' presence may or may not have had on the jurors. The court made a reasonable decision based on the facts of this case, and Pizon offers no convincing rationale for why we should substitute our judgment for that of the circuit court.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

The parcels had been previously listed with another realty company.

In addition to the arguments we address substantively, Pizon claims that the circuit court prompted Jones at trial during an off-the-record conversation, and argues this prompting was somehow improper. But Pizon cites no law in support of his argument, nor does he specify what remedy he seeks. Because this argument lacks any meaningful development, we will not address it. State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments). To do so would render us susceptible to the same criticism he levels at the circuit court-assisting a party who has not made his or her case. Pizon also suggests that the circuit court should have given a supplemental instruction he proffered. But this argument is undeveloped too.

The Committee concluded that "greater weight" was "much more understandable by the average juror" than "preponderance." Wis JI- Civil 200 cmt.

Some cases at the time of Nyka discussed imprecision in how courts described the higher standard. See Kuehn v. Kuehn , 11 Wis. 2d 15, 26-30, 104 N.W.2d 138 (1960). But we do not see anything in Nyka incorporating "clear" or any of the other relevant modifiers used to invoke the higher standard.

Pizon also complains that the circuit court should have granted a motion to exclude Hauer's testimony on the basis that he did not have an opportunity to examine Hauer prior to trial, and that Hauer did not prepare a report for Pizon to review. Had Hauer been deposed or provided a report, Pizon claims he "would have had an opportunity to pursue a Daubert -type motion under Wis. Stat. § 907.02 because Dr. Hauer's opinion testimony is not consistent with the law of Wisconsin or recognized in the field of psychology." Hauer raised this procedural objection during the first day of trial, and the circuit court granted an adjournment so that Pizon could review Hauer's trial notes. Pizon makes no effort to explain why the adjournment did not adequately allow him to prepare. And, as explained in this opinion, his substantive challenges to Hauer's testimony are meritless. Thus, we reject this argument for lack of meaningful development. See Pettit , 171 Wis. 2d at 646-47.

After Hauer explained his academic credentials, previous academic employment, and forty-year history of practicing psychology, Pizon had "[n]o objection" to the court finding Hauer qualified. On appeal, Pizon similarly makes no argument that Hauer was unqualified, only that Hauer's reliance on his experience was somehow improper. Pizon does appear to throw a shade at Hauer by noting that he was "not board certified," but fails to mention that Hauer was licensed to practice psychology and makes no attempt to show that lack of board certification made Hauer unqualified to render an opinion.
Pizon also suggests that had Hauer filed a report, he would have raised a Daubert challenge prior to trial. But we see no error in admitting this testimony no matter when it would have been challenged.

Pizon claims (without any record citation) that "Hauer admitted that his theory [of apparent lucidity] was not recognized in the field of psychology." In fact, Pizon's counsel asked whether Hauer's theory that Jones was incompetent despite periods of apparent lucidity was "widely accepted in the psychological field." Hauer responded, "Yes."