**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1412

_____

AKA Distributing Company,              *
                                            *

      Plaintiff - Appellant,       *

                                          *   Appeal from the United States

      v.                             *   District Court for the

                                          *   District of Minnesota.

Whirlpool Corporation,           *

                                          *

      Defendant - Appellee.      *

_____

Submitted: October 23, 1997

Filed: March 6, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

AKA Distributing Company appeals the district court's[1] grant of summary judgment dismissing breach of contract, fraud, constructive fraud, and negligent misrepresentation claims against Whirlpool Corporation. We conclude the contract claim is governed by the Uniform Commercial Code and time-barred, the fraud claim is barred by Minnesota's economic loss doctrine, and the constructive fraud and negligent misrepresentation claims are without merit. Accordingly, we affirm.

---

[1]The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota.

The facts relevant to the issues on appeal can be briefly stated. AKA's owner, Allen Allstadt, has been in the vacuum cleaner sales and service business since 1974. He formed AKA in 1979 for the wholesale distribution of floor care products. Whirlpool approached Allstadt in 1984 about distributing a new line of branded upright and canister vacuum cleaners. Allstadt examined the new products and suggested improvements to Whirlpool. AKA then signed a distributor contract in February 1985. The written contract prescribed a one-year term, but Whirlpool representatives assured Allstadt that the relationship would be a long one. In early 1986, with the contract about to expire, Allstadt met with John Geehring, Whirlpool's national sales manager. They agreed that the relationship would continue without a written contract under the terms of the 1985 contract. Geehring again assured Allstadt that the relationship would be a long-term one. Geehring repeated that assurance to Allstadt at a July 1986 distributors meeting, and David Allen, Whirlpool's Division Vice President, gave a similar assurance in the presence of all the distributors.

The new Whirlpool line was beset with product problems. Allstadt and other AKA employees forwarded many engineering suggestions to Whirlpool in an effort to improve the products and to meet AKA's contractual obligation to resolve customer complaints. Geehring agreed that AKA's suggestions substantially improved the products and in one instance prevented a recall. However, on January 6, 1988, Whirlpool gave notice it would terminate the floor care line and AKA's distributorship effective April 1, 1988, the same day that Whirlpool announced a major vacuum cleaner purchase commitment from Sears Roebuck and Company.

AKA commenced this action on December 28, 1993. In essence, AKA alleges that Whirlpool fraudulently told distributors they would be selling Whirlpool products for a long time, concealing its secret plan to manufacture private label cleaners for Sears. Whirlpool thereby lured AKA and others into signing distributor contracts for branded products so it could capture their engineering talents in developing a product line acceptable to Sears.

# I. The Contract Claim.

The district court dismissed AKA's breach of contract claim as time-barred by the four-year statute of limitations in Article 2 of the Minnesota Uniform Commercial Code. See Minn. Stat. § 336.2-725. Article 2 applies to "transactions in goods." Minn. Stat. § 336.2-102. On appeal, AKA argues that Article 2 does not apply to its distributor contract with Whirlpool. That contract primarily involved the provision of services, AKA reasons, because of the engineering services it provided to improve Whirlpool products and the "enormous efforts" expended by AKA to remedy product defects and resolve customer complaints.

The distributor contract, as opposed to a particular order for vacuum cleaners, involved a mix of goods and services. Minnesota courts use the "predominant purpose" test to determine whether Article 2 applies to such a contract or transaction. See Vesta State Bank v. Independent State Bank, 518 N.W.2d 850, 854 (Minn. 1994).

> The test [for mixed contracts is] whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom).

Bonebrake v. Cox, 499 F.2d 951, 960 (8th Cir. 1974). Applying this test, most courts have concluded that contracts for the distribution of goods are governed by Article 2. See Ralph's Distrib. Co. v. AMF, Inc., 667 F.2d 670, 673 n.6 (8th Cir. 1981) (Iowa law); Kirby v. Chrysler Corp., 554 F. Supp. 743, 748-50 (D. Md. 1982).[2]

---

[2]For contrary authority, AKA relies on our decision in United Indus. Syndicate, Inc. v. Western Auto Supply Co., 686 F.2d 1312, 1315-16 (8th Cir. 1982). But Missouri law governed that case, and Missouri rejects "the general view." Vigano v. Wylain, Inc., 633 F.2d 522, 525 n.3 (8th Cir. 1980).

We agree with the district court that the predominant purpose of AKA's "Associate Distributor Sales Agreement" with Whirlpool was the sale of goods. Whirlpool wanted to sell floor care products at wholesale to AKA, and AKA wanted to resell those products to retail customers. The sales agreement describes Whirlpool and AKA as "Vendor and Vendee." It provides terms for establishing price, filling orders, and shipments. The services AKA provided were incidental to selling vacuum cleaners, and there is no evidence Whirlpool paid AKA for services, other than payments for warranty repairs governed by a separate Floor-Care Service Agreement. Thus, Article 2 governs the contract, and AKA's breach of contract claim is time-barred by Article 2's four-year statute of limitations.

## II. The Tort Claims.

The district court held that Minnesota's economic loss doctrine bars AKA's tort claims for fraud, constructive fraud, and negligent misrepresentation because AKA suffered only economic loss and therefore is limited to its contractual remedies under Article 2. AKA argues on appeal that the doctrine does not apply because AKA is not seeking to circumvent warranty remedies and in any event the doctrine does not bar fraud and misrepresentation claims.

In Superwood Corp. v. Siempelkamp Corp., 311 N.W.2d 159, 160-62 (Minn. 1981), a products liability case, the Minnesota Supreme Court first held that "economic losses arising out of commercial transactions are [not] recoverable under negligence and strict products liability theories." Instead, plaintiffs in such cases are limited to their contract and warranty remedies under the U.C.C. Although the discussion in Superwood emphasized the need to ensure the integrity of the U.C.C.'s warranty remedies governing sales transactions, the Court later clarified that a "commercial transaction" for purposes of Superwood's economic loss doctrine "is a transaction governed by Article 2 of the Uniform Commercial Code." McCarthy Well Co. v. St. Peter Creamery, Inc., 410 N.W.2d 312, 314 (Minn. 1987). Thus, AKA's contention

that the doctrine does not apply because AKA is not seeking to circumvent warranty remedies is without merit.[3]

Although <u>Superwood</u> involved tort claims of negligence and strict products liability, the court more broadly discussed whether "tort liability in commercial transactions" should be allowed. 311 N.W.2d at 162. This, plus extension of the doctrine in later cases to all contracts governed by Article 2, suggest that the Minnesota Supreme Court would extend the doctrine to other kinds of torts asserted by commercial claimants in cases where the policies underlying <u>Superwood</u> favor limiting remedies to those in the U.C.C. However, the Minnesota Supreme Court has not addressed whether the economic loss doctrine bars fraud and misrepresentation torts. Without such precedent, we must determine how that Court would likely apply the doctrine in this case. See <u>Toney v. WCCO Television, Midwest Cable & Satellite, Inc.</u>, 85 F.3d 383, 389 (8th Cir. 1996). The Minnesota Court of Appeals held fraud and misrepresentation claims barred in one unpublished decision. See <u>ETM Graphics, Inc. v. City of St. Paul</u>, 1992 WL 61394 (Minn. Ct. App. Mar. 31, 1992). The District of Minnesota ruled similarly in a number of cases prior to its decision in this case. See <u>In re Grain Land Coop Cases</u>, 978 F. Supp. 1267 (D. Minn. 1997); <u>Upsher-Smith Labs. v. Mylan Labs.</u>, 944 F. Supp. 1411 (D. Minn. 1996); <u>Nelson Distrib., Inc. v. Stewart-Warner Corp.</u>, 808 F. Supp. 684 (D. Minn. 1992); <u>contra</u> <u>Northern States Power Co. v. International Tel. & Tel. Corp.</u>, 550 F. Supp. 108 (D. Minn. 1982).

---

[3]The economic loss doctrine is now in part statutory. Acting in response to <u>Hapka v. Paquin Farms</u>, 458 N.W.2d 683 (Minn. 1990), which narrowed a <u>Superwood</u> exception to the doctrine, the Minnesota Legislature enacted Minn. Stat. § 604.10. But that statute is limited to sales of goods, whereas we deal here with a different type of Article 2 contract. We see no indication that the statute was intended to replace or narrow the scope of the broader common law doctrine. See <u>Lloyd F. Smith Co. v. Den-Tal-Ez, Inc.</u>, 491 N.W.2d 11, 17 & n.7 (Minn. 1992); <u>Regents of the Univ. of Minn. v. Chief Indus., Inc.</u>, 106 F.3d 1409, 1411 (8th Cir. 1997).

Though some of these cases broadly state that fraud and misrepresentation claims are barred, we do not think the issue can be answered categorically. As countless other cases illustrate and as § 2-721 of the U.C.C. confirms,[4] the presence of a governing commercial contract neither preempts nor eliminates the need for all fraud claims to which the parties' dealings may give rise. See, e.g., R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 830-31 (8th Cir. 1983) (applying Missouri law). A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement. That distinction has been drawn by courts applying traditional contract and tort remedy principles. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996); Kee v. National Reserve Life Ins. Co., 918 F.2d 1538, 1543 (11th Cir. 1990); OHM Remediation Services Corp. v. Hughes Envtl. Systems, Inc., 952 F. Supp. 120, 122-23 (N.D.N.Y. 1997). It has been borrowed (not always with attribution) by courts applying the economic loss doctrine to claims of fraud between parties to commercial transactions. See Raytheon Co. v. MgGraw-Edison Co., 979 F. Supp. 858, 870-73 (E.D. Wis. 1997); Allmand Assocs., Inc. v. Hercules Inc., 960 F. Supp. 1216, 1227-28 (E.D. Mich. 1997); Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 76-78 (Fla. Dist. Ct. App. 1997); Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc., 532 N.W.2d 541, 544-46 (Mich. Ct. App. 1995). We think the Minnesota Supreme Court would resolve the legal issue in this case by holding that, in a suit between merchants, a fraud claim to recover economic losses must be independent of the Article 2 contract or it is precluded by the economic loss doctrine.

To apply this standard, we must examine the nature of AKA's fraud and misrepresentation claims. The fraud claim is that Whirlpool lied when it said AKA would be a distributor for a long time. But duration was a term of the contract, and

---

[4]"Remedies for material misrepresentation or fraud include all remedies available under this article for nonfraudulent breach." Minn. Stat. § 336.2-721.

breach of that term was the basis for AKA's time-barred contract claim.[5]  We agree with the district court that this claim is not independent of the contract and its performance, and therefore the economic loss doctrine limits AKA to its Article 2 remedies for breach of the contract's duration terms.  Compare General Aviation, Inc. v. Cessna Aircraft Co., 13 F.3d 178, 183 (6th Cir. 1993) (fraud claim that dealer was promised "long-term" relationship "simply rehashes the breach of contract claim").  On the other hand, AKA's constructive fraud and negligent misrepresentation claims were based upon Whirlpool's failure to disclose its plan to capture additional Sears private label business.  That is the sort of collateral subject that can support an independent fraud-in-the-inducement claim.  However, no affirmative misrepresentation is alleged, and Whirlpool had no duty to disclose to arms-length distributors its unrelated plans to market private label products.

We have carefully considered AKA's remaining contentions and conclude they are without merit.  Accordingly, the judgment of the district court is affirmed.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]AKA's time-barred theory was that Whirlpool breached the distributor contract by terminating without cause because the parties to a contract that is indefinite in duration may terminate at any time "unless otherwise agreed."  Minn. Stat. § 336.2-309(2).