In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1168

Home Valu, Inc.,

Plaintiff-Appellant,

v.

Pep Boys   Manny, Moe and Jack
of Delaware, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98-C-531--J.P. Stadtmueller, Chief Judge.

Argued February 14, 2000--Decided May 24, 2000

Before Bauer, Flaum, and Evans, Circuit Judges.

Bauer, Circuit Judge.  After a real estate deal fell apart, Home Valu, Inc. sued Pep Boys Manny, Moe & Jack of Delaware, Inc. for the torts of negligent misrepresentation, strict responsibility misrepresentation, and intentional misrepresentation. Home Valu also brought a breach of contract claim. Exercising jurisdiction over this state law dispute under 28 U.S.C. sec. 1332, the district court dismissed Home Valu's complaint for failure to state a claim upon which relief can be granted. Home Valu appeals. We affirm.

I.  Background

Home Valu operated a retail store under the name "Drexel" located at 8787 West Brown Deer Road in Milwaukee, Wisconsin. Drexel sold repair and home improvement goods. Although its Drexel store was profitable, Home Valu decided to close it and sell the property to Pep Boys--then a rapidly growing retailer of automotive parts and services--to accommodate Pep Boys' planned expansion into Wisconsin.

Home Valu and Pep Boys executed a written Agreement of Sale on May 15, 1997. The Agreement gave Pep Boys 180 days to satisfy certain contingencies, such as obtaining local and state permits to operate its auto service business and to verify environmental and other characteristics of the property. Once the contingencies were met,

the parties were to close within 30 days. The Agreement provided, however, that if Pep Boys could not satisfy the contingencies, Pep Boys had the option of terminating the Agreement, after giving notice to Home Valu, or the right to waive the contingencies and finalize without reference to the contingencies.

About 30 days before the time the Agreement gave Pep Boys to complete the contingencies, the parties extended the closing date to December 31, 1997. Then, roughly a month later, the parties entered into a written Amendment of their original Agreement of Sale./1 The Amendment extended the deal's closing date again, this time until March 1, 1998.

At some point, Pep Boys experienced a downturn in revenue. Shortly before it negotiated the Amendment, Pep Boys' Chairman and CEO commented in a written memorandum that "It is definitely NOT business as usual at Pep Boys. Literally everything we do is being revalidated--nothing is sacred." Pep Boys' CEO also stated that the company's 1998 expansion rate would be lower and that Pep Boys did not know how many new states it would enter because expansion plans were undeveloped.

Pep Boys notified Home Valu in mid-February 1998 that it would not purchase the Drexel property. The contract contained a liquidated damages clause which limited Pep Boys' liability for breach of the contract to $50,000. Pep Boys invoked the liquidated damages clause and offered to pay Home Valu $50,000 for the breach. Home Valu refused the offer.

Home Valu was unhappy with the $50,000 offer because, shortly after extending the closing date until March 1, 1998, Home Valu began the expensive process of closing its Drexel store. Home Valu spent more than $800,000 closing down Drexel in preparation for the scheduled March 1, 1998 sale. Rather than accepting $50,000 to compensate it for $800,000 in expenses, Home Valu filed suit against Pep Boys in Wisconsin state court. Pep Boys removed the case to federal district court and Home Valu filed an amended complaint. Home Valu's seven-count amended complaint alleged two counts of negligent misrepresentation, two counts of strict responsibility misrepresentation, two counts of intentional misrepresentation, and one count of breach of contract.

Home Valu's misrepresentation claims can be divided into two groups. The first group concerned statements Pep Boys made which induced Home Valu into executing the Amendment. In these

pre-Amendment statements, Pep Boys repeatedly assured Home Valu that it would purchase the property if the closing date were extended to March 1, 1998. Home Valu claimed that these statements were false and that when Pep Boys made them it had no intention of purchasing the property. Home Valu claimed that Pep Boys made these false statements for the sole purpose of inducing Home Valu into executing the Amendment and that Pep Boys had an economic interest in extending the closing date. According to Home Valu, these false statements constituted negligent, strict responsibility, and intentional misrepresentations.

The second group of claimed misrepresentations related to statements that Pep Boys made after the parties executed the Amendment extending the purchase date. In these claims, Home Valu said that it became concerned about whether Pep Boys would honor its obligation under the Amendment and proceed with the purchase on March 1, 1998. As a result of these concerns, Home Valu again asked Pep Boys about its intent to finalize the real estate transaction on the scheduled closing date. In response to these inquiries, Pep Boys told Home Valu on several occasions that it would in fact purchase the property on or before the closing date. According to Home Valu, these statements were false and Pep Boys knew them to be false when it made them. Home Valu asserted that these untrue statements caused it to continue closing its Drexel store when it would have abandoned the process and averted substantial financial losses if it had known that Pep Boys was not going to consummate the deal. Based on these facts, Home Valu stated that Pep Boys had committed the torts of negligent, strict responsibility, and intentional misrepresentation.

In its breach of contract claim, Home Valu first made the simple allegation that Pep Boys breached the contract by failing to purchase the property by March 1, 1998. In addition to this claim, Home Valu alleged that Pep Boys violated the covenant of good faith and fair dealing. Home Valu stated that it began closing its Drexel store because Pep Boys waived the applicable contingencies and this waiver required Home Valu to begin shutting down Drexel. Home Valu asserted that "in exercising its right to require Home Value to undertake the expensive process of closing down its profitable Drexel . . . store, Pep Boys had a continuing duty to act in good faith and fair dealing and to cooperate with Home Valu." According to Home Valu, Pep Boys breached this duty of good faith by repeatedly reassuring Home Valu that it would purchase the property even though "Pep Boys knew in 1997 and in January

and February of 1998 that it might not honor its Agreement to close on the purchase of the property."

The district court dismissed Home Valu's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Home Valu now challenges the district court's ruling.

II.  Analysis

We review the district court's grant of a motion to dismiss under Rule 12(b)(6) de novo. Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999). In reviewing a dismissal, we accept all factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. Klug v. Chicago Sch. Reform Bd. of Trustees, 197 F.3d 853, 858 (7th Cir. 1999). We will affirm only if it appears beyond a doubt that the plaintiff cannot prove any set of facts that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Frederick v. Simmons Airlines, 144 F.3d 500, 502 (7th Cir. 1998). Finally, by virtue of the parties' agreement, we apply Wisconsin tort and contract law to this dispute. See Harter v. Iowa Grain Co., Nos. 98-3010 & 98-3817, 2000 WL 426366, at *15 n.12 (7th Cir. April 21, 2000) (we forego choice of law analysis when the parties agree on the law that governs a dispute and there is a reasonable relation between the dispute and the forum whose law has been selected).

Because resolution of the issues in this case depends on Wisconsin law, "we must apply the law that would be applied in this context by the Wisconsin Supreme Court." McGeshick v. Choucair, 9 F.3d 1229, 1232 (7th Cir. 1993) (citing Green v. J.C. Penney Auto Ins. Co., 806 F.2d 759, 761 (7th Cir. 1986)). If the Wisconsin Supreme Court has not spoken on the issue, we generally treat decisions by the state's intermediate appellate courts as authoritative "unless there is a compelling reason to doubt that [those] courts have got the law right." Rekhi v. Wildwood Indus., 61 F.3d 1313, 1319 (7th Cir. 1995). When we are faced with two opposing and equally plausible interpretations of state law, "we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." Birchler v. Gehl Co., 88 F.3d 518, 521 (7th Cir. 1996) (citing Todd v. Societe Bic, S.A., 21 F.3d 1402, 1412 (7th Cir. 1994)).

A.  Misrepresentation Claims

The district court dismissed all six of Home Valu's misrepresentation claims as barred by Wisconsin's economic loss doctrine. The Wisconsin Supreme Court has followed "the majority of courts across the country in applying the economic loss doctrine to commercial transactions." State Farm Mut. Auto Ins. Co. v. Ford Motor Co., 592 N.W.2d 201, 208 (Wis. 1999). Under the economic loss doctrine, Wisconsin law bars tort claims which seek only "economic losses" related to a commercial transaction. Wausau Tile, Inc. v. County Concrete Corp., 593 N.W.2d 445, 451 (Wis. 1999). Wisconsin's highest court draws the line between economic and non-economic loss by emphasizing that economic loss is damage "which does not cause personal injury or damage to other property." Daanen & Janssen, Inc. v. Cedarapids, Inc., 573 N.W.2d 842, 845 (Wis. 1998). In contrast, non-economic damages, which are recoverable in tort, involve some "physical harm" or other "unreasonable risk of injury to person or property." Northridge Co. v. W.R. Grace and Co., 471 N.W.2d 179, 185 (Wis. 1991).

In reviewing the district court's dismissal of Home Valu's several misrepresentation claims, we do not write on a clean slate. Rather, we have previously upheld the dismissal of tort claims for negligent misrepresentation and strict responsibility misrepresentation as barred by Wisconsin's economic loss doctrine. See Badger Pharmacal, Inc. v. Colgate-Palmolive Co., 1 F.3d 621, 628 (7th Cir. 1993). In Badger Pharmacal, we applied Wisconsin law and reasoned that "'tort law provides no remedy in a case in which the plaintiff is seeking to recover for a commercial loss rather than damage to person, property, or reputation.'" Id. (quoting Midwest Knitting Mills, Inc. v. United States, 950 F.2d 1295, 1300 (7th Cir. 1991) (also applying Wisconsin law)). Since our holding in Badger Pharmacal, no Wisconsin court has ruled to the contrary. We therefore adhere to our view that the Wisconsin Supreme Court would not recognize tort claims for negligent or strict responsibility misrepresentation "when two corporations, with the benefit of counsel, negotiate a commercial transaction at arms length." Badger Pharmacal, 1 F.3d at 627.

Having found that Judge Stadtmueller correctly dismissed the negligent and strict responsibility misrepresentation claims, we consider Home Valu's two allegations that Pep Boys committed the tort of intentional misrepresentation. However, this issue, too, has been addressed before now. In Cooper Power Systems, Inc. v. Union Carbide Chems. & Plastics Co., Inc., 123 F.3d 675, 682

(7th Cir. 1997), we noted that this court "has already predicted that Wisconsin would not allow a negligence or strict [responsibility] misrepresentation claim seeking to recover economic damages. We perceive no basis for treating . . . [an] intentional misrepresentation claim any differently." Our decision in Cooper Power dooms Home Valu's two claims of intentional misrepresentation.

Home Valu tries to avoid the economic loss doctrine and preserve at least one of its tort claims by citing Douglas-Hanson Co., Inc. v. BF Goodrich Co., 598 N.W. 262 (Wis. Ct. App. 1999). In Douglas-Hanson, the Wisconsin Court of Appeals reviewed a jury verdict in the plaintiff's favor. After concluding that the jury had found that the plaintiff was fraudulently induced to enter a contract, the court confronted the issue of "whether the economic loss doctrine prohibits a plaintiff from recovering tort damages when an intentional misrepresentation fraudulently induces a plaintiff to enter a contract." Id. at 268. The court answered this question in the negative and held that "the economic loss doctrine does not bar claims for intentional misrepresentation when the misrepresentation fraudulently induces a party to enter a contract." Id. at 270-71. In reaching this conclusion, the court noted tension with our decision in Cooper Power, but found that the "better public policy" was to allow such tort claims. Id. at 270. Armed with this decision, Home Valu asserts that Douglas-Hanson saves its intentional misrepresentation claim that Pep Boys fraudulently induced it into signing the Amendment which extended the closing date to March 1, 1998.

Although we usually treat decisions by state intermediate appellate courts as authoritative, Rekhi, 61 F.3d at 1319, we are nevertheless required to rule as we believe the Supreme Court of Wisconsin would rule in this context. McGeshick, 9 F.3d at 1232. In this case, we find a compelling reason to refrain from following the Wisconsin Court of Appeals' decision in Douglas-Hanson. Specifically, a few weeks after we heard oral argument in this case, the Supreme Court of Wisconsin (which had granted a petition to review the intermediate appellate court's opinion in Douglas-Hanson) issued a per curiam statement that "the court is equally divided on the question of whether the published decision of the court of appeals . . . should be affirmed or reversed." Douglas-Hanson Co., Inc. v. BF Goodrich Co., 607 N.W.2d 621 (Wis. 2000). While this evenly divided court resulted in an affirmance under Wisconsin law, id., Smith v. State, 163 N.W.2d 8 (Wis. 1968), it did not make

the Wisconsin Court of Appeals' Douglas-Hanson decision binding authority of the Wisconsin Supreme Court. See Neil v. Biggers, 409 U.S. 188, 192 (1972) (an affirmance by an equally divided court is not entitled to precedential weight); State ex rel. Thompson v. Jackson, 546 N.W.2d 140, 142 (Wis. 1996) ("a majority of the participating justices must agree on a particular point for it to be considered the opinion of the court").

Because the Wisconsin Supreme Court did not garner a majority to affirm the Wisconsin Court of Appeals' holding that the economic loss doctrine does not bar claims for intentional misrepresentation that allege fraudulent inducement, the issue remains unresolved. And, as exhibited by the equally divided Wisconsin Supreme Court, whether the economic loss doctrine does bar such a tort claim is an issue over which there is considerable disagreement. Where, as in this case, we are faced with two equally plausible interpretations of state law, "we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." Birchler, 88 F.3d at 521. We therefore take the approach that is restrictive of liability and conclude that Wisconsin's economic loss doctrine bars Home Valu's intentional misrepresentation claim that it was fraudulently induced into executing the Amendment. Accordingly, we affirm the district court's decision to dismiss Home Valu's misrepresentation claims as barred by Wisconsin's economic loss doctrine.

B.  Breach of Contract Claim

Although it brought only one breach of contract count in its complaint, Home Valu actually alleges two separate breaches. Home Valu first complains that Pep Boys breached the express terms of the contract when it failed to purchase the property by March 1, 1998. The district court denied this claim because the contract's liquidated damages clause limited Pep Boys' liability for breach to $50,000 and Pep Boys had already offered to pay Home Valu $50,000. Finding no legal basis for recoverable damages beyond the $50,000 that Pep Boys had already offered to pay, Judge Stadtmueller held that Home Valu did not state a claim upon which relief could be granted.

We agree with the district judge that Home Valu has no further claim for breach of contract. The parties bargained for and agreed on a liquidated damages clause that clearly and unambiguously limited Pep Boys' liability for a breach to

$50,000. Pep Boys offered to pay Home Valu $50,000 for its failure to buy the property and that money has been placed into an escrow account pending the outcome of this litigation. In the event that Pep Boys prevails in this appeal (which it now has), Home Valu can collect the $50,000 in liquidated damages from the escrow account. That fully satisfies the question of damages for the breach.

Home Valu's second breach of contract theory alleges that Pep Boys violated the covenant of good faith and fair dealing by telling Home Valu that it would purchase the property even though Pep Boys knew it would not go through with the deal. The district court held that the duty of good faith and fair dealing is an implied provision of the contract and therefore any breach of this term simply triggers the liquidated damages clause. No additional damages are available, even assuming the correctness of the claim of violation of fair dealing or good faith.

It is well-settled that Wisconsin law recognizes the implied contractual duty of good faith and fair dealing in commercial contracts. See Market St. Assocs. Ltd. Partnership v. Frey, 941 F.2d 588, 593-94 (7th Cir. 1991); Hauer v. Union State Bank of Wautoma, 532 N.W.2d 456, 463-64 (Wis. Ct. App. 1995). However, the implied covenant "does not support an independent cause of action for failure to act in good faith under a contract." Hauer, 532 N.W.2d at 464. Instead, the duty of good faith is meant to "give the parties what they would have stipulated for" at the time of contracting if they could have foreseen all future problems of performance. Market St. Assocs., 941 F.2d at 596. As the district court pointed out, the requirement of good faith "was not of a duty independent of the contract, but of the contract itself." Because a breach of the duty of good faith is the same as a breach of any other contract term, Home Valu is entitled to its contractual liquidated damages, but nothing more.

We affirm the decision of the district court.

FOOTNOTES

/1 The original Agreement of Sale and the subsequent Amendment collectively govern the parties' contractual rights. Because these two agreements work together, we will treat them as one and refer to them collectively as "the contract."