**NORTHWESTERN PUBLIC SERVICE,**
a division of Northwestern Corpora-
tion, f/k/a Northwestern Public Ser-
vice Company, Plaintiff,

v.

**UNION CARBIDE CORPORATION,**
Defendant.

No. CIV 99–4182.

United States District Court,
D. South Dakota,
Southern Division.

Sept. 28, 2000.

Richard O. Gregerson, James E. Moore, Woods, Fuller, Shultz & Smith, Sioux Falls, Russell C. Molstad, Jr., Huron, Stephen J. Powell, Jim D. DeKoster, Swisher Cohrt, PLC, Waterloo, IA, for Plaintiff.

Thomas G. Firtz, Lynn, Jackson, Shultz & Lebrun, Rapid City, Eric F. Quandt, Kelley, Drye & Warren, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The defendant, Union Carbide Corporation, has filed a Motion to Dismiss the Amended Complaint filed against it by the plaintiff, Northwestern Public Service. For the reasons stated below, the Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

This case involves polyethylene pipe which the parties refer to as "Century Pipe."[1] The Century Pipe was made from a chemical compound known as DHDA–2077 Tan, which was developed, manufactured, distributed and sold by defendant. According to the Amended Complaint, plaintiff purchased the Century Pipe from several entities other than defendant from 1970 through 1974, and installed the pipe as part of its natural gas distribution systems in South Dakota and Nebraska from 1971 through 1974. Plaintiff alleges that it discovered defects in the DHDA–2077 Tan in 1997 and that these defects caused the Century pipe to be subject to premature failure, unreasonably dangerous, and a threat to public safety. Plaintiff claims that, as a result of these defects, it has had to replace all of the Century Pipe in its gas distribution systems.

In this lawsuit, plaintiff seeks to recover the cost of replacing the pipe as well as punitive damages. Plaintiff's Amended Complaint contains ten counts: (1) Negligence; (2) Strict Products Liability; (3) Intentional Misrepresentation; (4) Concealment; (5) Breach of Express Warranty; (6) Breach of Implied Warranty of Merchantability; (7) Breach of Implied Warranty of Fitness for a Particular Purpose; (8) Unjust Enrichment; (9) Deceit; and (10) Deceptive Trade Practices.[2] In its Motion to Dismiss, defendant seeks the dismissal of each of these counts.

## DISCUSSION

No count in the Amended Complaint may be dismissed under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that plaintiff can prove no

---

1. The name "Century Pipe" comes from the fact that plaintiff purchased the pipe in question from Century Pipe Company and Century Utility Products, Inc., as well as from Amdevco Products, Inc.

2. The Motion to Dismiss was originally filed with respect to the original Complaint. Just before oral argument on the Motion to Dismiss, however, plaintiff filed an Amended Complaint, adding several new allegations to its existing causes of action, as well as two additional causes of action. Following oral argument on the Motion to Dismiss, the Court allowed each party to file a brief on how the amendments to the Complaint affected the issues raised in the Motion to Dismiss. This Memorandum Opinion and Order addresses the Amended Complaint.

set of facts demonstrating that it is entitled to relief on that count. *See Springdale Educ. Ass'n. v. Springdale School Dist.*, 133 F.3d 649, 651 (8th Cir.1998).

■ The parties agree that this case is governed by the substantive law of South Dakota. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When this Court is applying South Dakota law under *Erie*, and the South Dakota Supreme Court has not specifically addressed an issue, the Court must determine what the state supreme court would probably hold were it to decide the issue. *Farr v. Farm Bureau Ins. Co. of Nebraska*, 61 F.3d 677, 679 (8th Cir.1995). In resolving such questions, the Court may consider relevant state precedent, analogous decisions, scholarly works, and other reliable data. *See id.* These data include judicial decisions from other jurisdictions whose doctrinal approach to legal matters is substantially the same as South Dakota's and developing trends in the relevant field of substantive law. *See* 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4507, at 195–200 (1996).

## A. *Products Liability Claims*

■ Defendant argues that the first two counts of the Amended Complaint—both of which are products liability claims—are barred by the economic loss doctrine. Under this doctrine, economic losses are generally limited to the commercial theories found in the Uniform Commercial Code and are consequently not recoverable under tort theories of products liability. *City of Lennox v. Mitek Industries, Inc.*, 519 N.W.2d 330, 333 (S.D.1994); *see also Agristor Leasing v. Spindler*, 656 F.Supp. 653 (D.S.D.1987) (holding that economic losses are not recoverable under theories of strict

tort liability or negligence). There are established exceptions to the economic loss doctrine which allow recovery in tort for personal injury or damage to "other property." *City of Lennox*, 519 N.W.2d at 333; *see also Corsica Coop. Ass'n v. Behlen Mfg. Co., Inc.*, 967 F.Supp. 382 (D.S.D. 1997). In support of its products liability claims, plaintiff seeks the adoption of an additional exception to the doctrine, one that would allow recovery when a defective product "poses a substantial threat to public safety."

■ Plaintiff's claims of negligence and strict products liability do not fit within a "public safety" exception to the economic loss doctrine. The courts which have recognized such an exception have done so in order to provide a tort remedy for defective products whose risks were not foreseeable at the time of contracting. *See, e.g., Tioga Public School Dist. v. United States Gypsum Co.*, 984 F.2d 915, 918 (8th Cir.1993) (noting that the danger posed by the asbestos in question had nothing to do with the level of performance of the product); *80 South Eighth Street Ltd. Partnership v. Carey–Canada, Inc.*, 486 N.W.2d 393, 397 (Minn.1992) (noting that the plaintiff did not claim that the fireproofing in question failed to perform satisfactorily as fireproofing). In contrast,

> a claim arising from the failure of a product to meet expectations of suitability, quality and performance resulting in damages which a party to a sales contract could reasonably expect would flow from a defect in the product is a benefit of the bargain claim better addressed under contract and the Uniform Commercial Code.

*Carey–Canada*, 486 N.W.2d at 397.[3] In this case, the danger allegedly posed by the pipe—presumably the leaking of natu-

**3.** An example provided in one of the cases cited by plaintiff illustrates the distinction between an "economic loss," which is foreseeable, and an unforeseeable "non-economic loss":

> [I]f a fire alarm fails to work and a building burns down, that is considered an 'economic loss' even though the building was physi-

cally harmed. It was a foreseeable consequence from the failure of the product to work properly. But if the fire was caused by a short circuit in the fire alarm itself, it is not an economic loss.

*American Fire & Cas. Co. v. Ford Motor Co.*, 588 N.W.2d 437, 439 (Iowa 1999) (citation omitted).

ral gas—was a foreseeable result of the failure of DHDA–2077 Tan to perform its intended function as a component of the Century Pipe.[4] Because plaintiff's claims of negligence and strict products liability are not covered by a "public safety" exception, there is no need to decide whether South Dakota would adopt such an exception. As run-of-the-mill products liability claims, those claims are barred by the economic loss doctrine. *See Brookings Municipal Utilities, Inc. v. Amoco Chemical Co.*, 103 F.Supp.2d 1169, 1175 (D.S.D.2000); *Determan v. Johnson*, 613 N.W.2d 259, 263–64 (Iowa 2000) (denying tort remedy for significant structural defects in home plaintiff had purchased, even though the defects presented "a genuine safety hazard to persons and property," because the tort claim was based on unfulfilled expectations about the quality of the home).

### B. *Fraud Claims*

#### 1. *Economic Loss Doctrine*

A more difficult question is whether plaintiff's claims of intentional misrepresentation, fraudulent concealment, deceit and deceptive trade practices are barred under the economic loss doctrine. In support of these fraud claims, plaintiff alleges that defendant made intentional misrepresentations that "DHDA–2077 Tan complied with industry and regulatory requirements to be rated as a PE 2306 polyethylene pipe compound suitable for use in natural gas distribution systems." Plaintiff also alleges that defendant fraudulently concealed facts indicating that DHDA–2077 Tan did not meet these standards. Finally, plaintiff claims that the alleged misrepresentations and concealment about the quality of the Century Pipe induced plaintiff to purchase the pipe.

The parties take different positions on whether the economic loss doctrine per-

mits recovery for claims such as these. Defendant argues that the doctrine only allows claims of fraudulent inducement involving misrepresentations "that do not in themselves constitute contract or warranty terms subsequently breached by the seller." *See Huron Tool v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541, 546 (1995). Plaintiff, on the other hand, argues that the doctrine permits all claims of fraud in the inducement, regardless of whether the alleged misrepresentations involve warranty terms. *See Budgetel Inns, Inc. v. Micros Systems, Inc.*, 8 F.Supp.2d 1137, 1149 (E.D.Wis.1998). Under *Huron*, plaintiff's fraud claims—all of which concern the quality of the Century Pipe—would be barred under the economic loss doctrine. Under *Budgetel*, the economic loss doctrine would not bar those claims. Since the South Dakota Supreme Court has not yet addressed this issue, *see City of Lennox*, 519 N.W.2d at 333, the Court must predict whether the state supreme court would allow plaintiff to proceed on its claims of statutory and common-law fraud.

Applying the economic loss doctrine to fraud claims is a cumbersome job. The economic loss doctrine was developed and designed to protect contract law from being engulfed by the law of products liability. *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866–75, 106 S.Ct. 2295, 2299–2304, 90 L.Ed.2d 865 (1986); *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 149–52 (1965). Thus, the doctrine recognizes that, unless courts preserve an appropriate distinction between personal injuries and commercial losses, contract law will "drown in a sea of tort." *East River*, 476 U.S. at 866, 106 S.Ct. at 2299–2300 (citing Grant Gilmore, *The Death of Contract* 87–94 (1974)). Unlike the law of

---

**4.** Plaintiff argues that this issue cannot be determined without a factual record, because Plaintiff expects to show that it was not foreseeable at the time of contracting that the Century Pipe might eventually fail catastrophically. The issue, however, is not whether the alleged failure was foreseeable at the time of

contracting; rather, it is whether, at the time of contracting, it was foreseeable that the failure of the product to perform its intended function would cause the danger alleged. In this case, the danger allegedly posed by the premature failure of the Century Pipe was a foreseeable result of such a failure.

products liability, however, the law of fraud was not developed to redress only physical injuries to persons or property, but was designed to provide compensation for commercial losses as well. *See Hoff v. Bower,* 492 N.W.2d 912, 914 (S.D.1992) (affirming an award of compensatory damages for commercial losses caused by fraud) (citing *Trautman v. Coffman,* 39 S.D. 628, 166 N.W. 150, 151 (1918)); *see generally* Prosser & Keeton on Torts, §§ 105, 110 at 766–69 (5th ed.1984) (discussing the origins of the tort of deceit and measure of damages in fraud actions). In contrast to products liability claims, the threat which claims of fraud pose to contract law is not based on any slipperiness in the types of injuries it seeks to redress; rather, the threat is based on the ease with which a claim for breach of contract can be rephrased as a claim of fraud. *See Ice Bowl, L.L.C. v. Weigel Broadcasting Co.,* 14 F.Supp.2d 1080, 1084 (E.D.Wis.1998). Thus, any judicial attempt to protect contracts from the law of fraud must focus, not on the damages sought under particular fraud claims, but on how the substance of the fraud claims relates to any available claims for breach of contract.

Courts scrutinizing such claims are guided less by the economic doctrine as annunciated in *East River* and *Seely* than by traditional principles of tort and contract law. Courts have, in fact, been sorting out genuine fraud claims from re-labeled breach of contract claims since before the advent of the economic loss doctrine. *See, e.g., Arnold v. National Aniline & Chem. Co.,* 20 F.2d 364, 370 (2d Cir.1927); *Briefstein v. P. J. Rotondo Const. Co.,* 8 A.D.2d 349, 187 N.Y.S.2d 866, 868 (1st Dept.1959). The Eighth Circuit has noted that courts applying the economic loss doctrine to

fraud claims have done so by borrowing "traditional contract and tort remedy principles." *See AKA Distributing Co. v. Whirlpool Corp.,* 137 F.3d 1083, 1086–87 (8th Cir.1998). In *AKA Distributing,* citing cases from New York and Florida applying such principles, the Eighth Circuit predicted that, in a suit between merchants, the Minnesota Supreme Court would use the economic loss doctrine to bar fraud claims which relate to the terms of a contract for the sale of goods. *See id.* at 1087. Recently, the Eighth Circuit affirmed the prediction about Minnesota law which it made in *AKA Distributing. See Marvin Lumber & Cedar Co. v. PPG Industries, Inc.,* 223 F.3d 873 (8th Cir.2000).[5] This case, however, involves a different state and a different state supreme court. Under *AKA Distributing,* the relevant question is how the South Dakota Supreme Court would apply the "traditional" principles of the law of tort and contract to plaintiff's fraud claims.

The most important of these principles involves whether misrepresentations about performance under a contract should be viewed as a breach of the contract or as an independent tort. In *Huron,* the Michigan Court of Appeals explained that misrepresentations which relate to a breaching party's performance under a contract are "interwoven with the breach of contract" and "do not give rise to an independent cause of action in tort." *Huron,* 532 N.W.2d at 545. In contrast to *Huron,* the federal district court in *Budgetel* maintained that "[t]here is a considerable difference between a promise never intended to be performed (fraud in the inducement) and a promise intended to be performed but which ultimately is not (breach of contract)." *Budgetel,* 8 F.Supp.2d at 1147.[6]

---

**5.** In 1998, during a special session of the Minnesota Legislature, the Minnesota statute governing the economic loss doctrine was amended to clarify that the section "shall not be interpreted to bar causes of action based upon fraud or fraudulent or intentional misrepresentation or limit remedies for those actions." Minn.Stat. § 604.10(e) (2000). This year, the Minnesota Legislature again amend-

ed its statute to allow common-law misrepresentation claims between merchants so long as "the misrepresentation was made intentionally or recklessly." 2000 Minn. Laws ch. 358 (to be codified at Minn.Stat. § 604.10). *See Marvin Lumber & Cedar Co. v. PPG Industries, Inc.,* 223 F.3d 873, 882 (8th Cir.2000).

**6.** Other federal district judges in the Eastern District of Wisconsin have determined that

These competing versions of the economic loss doctrine implicate important policy considerations. The *Budgetel* approach will, to some extent, "unsettle contracts by exposing sellers to the risk of being held liable by a jury on the basis of self-interested oral testimony and perhaps made to pay punitive as well as compensatory damages." *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999) (opinion of Posner, C.J.). While avoiding this disruption, the *Huron* rule still allows buyers to protect themselves from misrepresentations:

> If the seller makes an oral representation that is important to the buyer, the latter has only to insist that the seller embody that representation in a written warranty. The warranty will protect the buyer, who will have an adequate remedy under the Uniform Commercial Code if the seller reneges.

*Id.; see also Huron*, 532 N.W.2d at 545 ("[W]here the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods."). Forcing a party to begin contract negotiations with the assumption that the other party is lying, however, comes with its own costs. Under the *Huron* rule,

> prospective parties to contracts will be able to obtain legal protection against fraud only by insisting that the other party to the contract reduce all representations to writing, and so there will be additional contractual negotiations, contracts will be longer, and, in short, transaction costs will be higher. And the additional costs will be incurred in the making of *every* commercial con-

tract, not just the tiny fraction that end up in litigation.

*Id.*, 174 F.3d at 867 (emphasis in original); *see also Budgetel*, 8 F.Supp.2d at 1148 ("How can parties freely allocate risks if they cannot rely on the opposite party to speak truthfully during negotiations regarding the subject matter of the contract—if they cannot tell what is a lie and what is not?"). As Chief Judge Posner has recognized, the balance of these competing considerations is close. *See All–Tech*, 174 F.3d at 867.

■ While the South Dakota Supreme Court has recognized the need to distinguish fraud claims from breach of contract claims, it has also indicated that fraud may occur in connection with a breach of contract. *See Hoffman v. Louis Dreyfus Corp.*, 435 N.W.2d 211, 214–15 (S.D.1989). In particular, the state supreme court has acknowledged that an independent claim of fraudulent inducement may be based on misrepresentations about contractual obligations. For example, in the recent case of *Engels v. Ranger Bar, Inc.*, 604 N.W.2d 241 (S.D.2000), the supreme court held that an "as is" clause in a contract for the sale of a tavern did not prevent the buyer from recovering damages for fraud based on the seller's misrepresentations about the quality of the tavern's roof. *Engels*, 604 N.W.2d at 245. The supreme court has also followed this principle in a case involving the sale of goods. In *Ducheneaux v. Miller*, 488 N.W.2d 902 (S.D. 1992), the court allowed a rancher to recover for deceit, based upon a seller's misrepresentations about the health of certain cattle the rancher had contracted to purchase, at the same time it upheld the rancher's claims for breach of contract. *Ducheneaux*, 488 N.W.2d at 912–13. In

the Wisconsin Supreme Court would probably follow *Huron*. *See Rich Products Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937 (E.D.Wis. 1999) (citing cases). The Wisconsin Supreme Court is currently equally divided on whether to follow or reject *Huron*. *See Douglas–Hanson Co., Inc. v. B.F. Goodrich Co.*, 233 Wis.2d 276, 607 N.W.2d 621 (2000) (per curiam), *aff'g* 229 Wis.2d 132, 598 N.W.2d 262, 270–71 (1999). In *Home Valu, Inc. v. Pep Boys*, 213

F.3d 960 (7th Cir.2000), the Seventh Circuit nevertheless predicted that the Wisconsin Supreme Court would ultimately follow *Huron*, based on the Seventh Circuit's custom of choosing between "two equally plausible interpretations of state law" by picking "the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." *Home Valu*, 213 F.3d at 965.

affirming the trial court's award of punitive damages in *Ducheneaux,* the supreme court noted that the misrepresentations about the health of the cattle was a tort "independent of the breach of contract," which "justified the award of punitive damages." *Id.* at 913–15. These cases, both of which identify misrepresentations about product quality as an independent tort, suggest that the South Dakota Supreme Court would follow the approach of *Budgetel,* and allow fraud claims under the economic loss doctrine.

The state supreme court's application of relevant policy considerations does not point toward the adoption of the *Huron* rule. As defendant notes, the supreme court adopted the economic loss doctrine out of respect for "negotiated agreements concerning all aspects of a commercial transaction including warranties, warranty disclaimers, and liability limitations." *City of Lennox,* 519 N.W.2d at 333. In addition, the supreme court has recognized that allowing punitive damages for a breach of contract "would create uncertainty and apprehension in the marketplace" through "the threat of additional punitive damages." *Grynberg v. Citation Oil & Gas Corp.,* 573 N.W.2d 493, 500 (S.D.1997); *cf. All–Tech,* 174 F.3d at 866. As Chief Judge Posner observed in *All–Tech,* however, these considerations do not lead inevitably to the rule established in *Huron,* because the *Huron* rule also increases transaction costs. *See All–Tech,* 174 F.3d at 867 (declining to resolve the conflict between competing policy considerations). While the supreme court has not expressly recognized the existence of these transaction costs, it has accepted a certain amount of "uncertainty and apprehension in the marketplace" by recognizing claims for punitive damages based upon misrepresentations about product quality. *See Engels,* 604 N.W.2d at 245, 247; *Ducheneaux,* 488 N.W.2d at 913–15; *cf. Grynberg,* 573 N.W.2d at 500–502 (affirming an award of damages in a contract case, based on fraud in the performance of the contract). The supreme court's acceptance of such uncertainty demonstrates that it would not be driven to adopt the *Huron* rule by the policy considerations urged by defendant.

On balance, the South Dakota Supreme Court seems more likely to hold that the economic loss doctrine does not bar fraud claims which concern the quality or characteristics of goods sold under a contract. As noted above, the Eighth Circuit has predicted that the Minnesota Supreme Court would reach a contrary result. *See Marvin Windows,* 223 F.3d at 885–86; *AKA Distributing,* 137 F.3d at 1086–87. However, the relevant lesson to be drawn from these cases is that the determination of whether such claims should be barred under the economic loss doctrine depends upon "traditional contract and tort remedy principles." *See AKA Distributing,* 137 F.3d at 1086. The South Dakota Supreme Court has applied these principles to allow fraud claims which concern the subject matter of contract for the sale of real property and a contract for the sale of goods. In federal diversity cases governed by state law whose "traditional principles" are similar to those of South Dakota, federal courts have held that fraud claims based on misrepresentations about product quality are not barred under the economic loss doctrine. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.,* 210 F.3d 1207, 1226–27 (10th Cir.2000) (applying Colorado law); *City of Richmond v. Madison Management Group,* 918 F.2d 438, 445–47 (4th Cir.1990) (Virginia law); *Cunningham v. PFL Life Ins. Co.,* 42 F.Supp.2d 872, 886–87 (N.D.Iowa 1999) (Iowa law). Thus, the Court predicts that, the economic loss doctrine notwithstanding, the South Dakota Supreme Court would afford a tort remedy for plaintiff's claims of intentional misrepresentation, fraudulent concealment, deceit and deceptive trade practices. The motion to dismiss these claims is denied.

#### 2. *Pleading Requirements Under Rule 9(b)*

Defendant also suggests, without any supporting authority or explanation, that plaintiff's allegations of fraud have not

been stated with sufficient particularity and should be stricken. Rule 9(b) of the Federal Rules of Civil Procedure provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

A plaintiff "need not plead fraud with complete insight before discovery is complete." *Gunderson v. ADM Investor Services, Inc.*, 2000 WL 1154423 at * 3 (8th Cir. Aug.16, 2000) (unpublished opinion) (citation and internal quotation marks omitted). "Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 at 648 (1990). Defendant has not set forth any explanation of how plaintiff's fraud claims fails to supply enough information for defendant to prepare a responsive pleading to those claims. Consequently, the fraud claims will not be stricken under Rule 9(b) at this early stage in the case.

### C. *Breach of Warranty Claims*

■ Defendant claims that plaintiff's breach of warranty claims are barred by the applicable statute of limitations. Breach of warranty claims under the Uniform Commercial Code "must be commenced within four years after the cause of action has accrued." SDCL 57A–2–725(1). Under § 2–725(2) of the Uniform Commercial Code, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." SDCL 57A–2–725(2). Under the circumstances of this case, the alleged breach of warranty occurred when tender of delivery was made. *See id.* The Amended Complaint alleges that the last delivery of pipe was made in 1974, which means that the four-year statute of limitations on plaintiff's breach of warranty claims expired sometime in 1978. Thus,

based solely on these allegations in the Amended Complaint, plaintiff's warranty claims appear to be untimely.

Where the dates in the complaint show that a plaintiff's warranty claims are untimely, those claims are subject to dismissal. *See Wilburn v. Pepsi–Cola Bottling Co. of St. Louis*, 492 F.2d 1288 (8th Cir. 1974); *see also* 5A Wright & Miller, *Federal Practice and Procedure*, § 1357 at 352–54 (West 1990). To avoid dismissal, plaintiff must "plead circumstances which would indicate why . . . the statute should be tolled." *See Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987).

■ The statute of limitations may be tolled under a theory which is pleaded in the Amended Complaint. Under South Dakota law, a defendant may be equitably estopped from raising the statute of limitations as a defense to a warranty claim. *See L.R. Foy Constr. v. S.D. State Cement Plant*, 399 N.W.2d 340, 343–46 (S.D.1987). In order to meet the elements of equitable estoppel, plaintiff must show: (1) that defendant made a false representation or concealment of fact; (2) that plaintiff was without knowledge of the real facts; (3) that defendant made the representation or concealment with the intention that it should be acted upon; and (4) that plaintiff relied upon the misrepresentation or concealment to its prejudice or injury. *Id.* at 344 (citation omitted). Plaintiff has alleged that defendant made misrepresentations and concealed facts about flaws in the Century Pipe. At this point in the litigation, it is a fair inference from these allegations that defendant's conduct prevented plaintiff from filing its complaint until 1997, after the statute of limitations had run. Accordingly, plaintiff's breach of warranty claims will not be dismissed at this time.

### D. *Unjust Enrichment and Restitution*

■ Because restitution is an equitable remedy, it is generally unavailable when there exists an adequate remedy at law.

*See Southtown Plumbing, Inc. v. Har–Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn. App.1992); *see also Holzworth v. Roth,* 78 S.D. 287, 101 N.W.2d 393, 395 (1960) ("[W]here the action is legal in nature, the absence of an adequate remedy at law is necessary to confer equitable jurisdiction."). Defendant argues that plaintiff's restitution claim is barred under this principle, because plaintiff has been afforded an adequate remedy at law, *i.e.,* damages for its breach of warranty claim.

 "It is not generally a ground for dismissal of a complaint asserting equitable claims that the plaintiff has an adequate remedy at law." *Cunningham,* 42 F.Supp.2d at 891. Plaintiff may have an adequate remedy at law, in the form of an action for fraud or for breach of warranty. However, it is too early to tell whether plaintiff's claims can be redressed under these theories. The motion to dismiss this claim will therefore be denied without prejudice. *See id.* at 891–92.

### CONCLUSION

For the reasons stated above, plaintiff's products liability claims must be dismissed under the economic loss doctrine. Plaintiff's claims of intentional misrepresentation, fraudulent concealment, deceit, and deceptive trade practices, however, will not be dismissed, either under the economic loss doctrine or Rule 9(b). For the time being, plaintiff's breach of warranty claims and its unjust enrichment claim will not be dismissed, either. Accordingly,

IT IS ORDERED:

(1) that the Motion to Dismiss (Docket No. 6) is granted in part and denied in part;

(2) that the Motion to Dismiss is granted as to Counts I and II of the Amended Complaint; and

(3) that the Motion to Dismiss is denied as to the remaining Counts of the Amended Complaint.